HURD v FORD MOTOR COMPANY

Docket No. 71185. Argued June 4, 1985 (Calendar No. 15).—Decided November 22, 1985.

Quay Hurd was denied workers' compensation benefits for injuries arising out of an attempted suicide which he claimed was caused by work-related mental disability. The Workers' Compensation Appeal Board reversed, granting full benefits and finding that the claimant's work environment contributed to his illness, attempted suicide, and resulting disability. The Court of Appeals, R. M. MAHER, P.J., and WAHLS and GRIBBS, JJ., denied leave to appeal (Docket No. 65151). The defendant appeals.

In an opinion by Justice RILEY, joined by Chief Justice WILLIAMS and Justices RYAN, BRICKLEY, CAVANAGH, and BOYLE, the Supreme Court *held*:

Section 301(2) of 1980 PA 357, which amended the Workers' Disability Compensation Act and which provides, inter alia, that mental disabilities are compensable where they arise out of or are significantly contributed to or aggravated or accelerated by actual events of employment and not unfounded perceptions, was enacted to invalidate *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1 (1978), which construed § 301(1) of 1969 PA 317 to provide compensation for mental disabilities where the claimant honestly, although mistakenly, believed the disability to be work-related, thus effecting a substantive change in the law which applies only to those personal injuries which occurred on or after January 1, 1982.

Affirmed.

Justice LEVIN, writing separately, stated that while 1980 PA 357, § 301(2) of the workers' compensation act has prospective application and is applicable to personal injuries occurring on or after January 1, 1982, it should not be inferred that § 301(2) applies only to injuries occurring on or after that date and does not apply to injuries occurring before January 1, 1982. The

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Workmen's Compensation §§ 301, 302.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

conflicting rules of statutory construction, providing an empty distinction between an amendatory act concerning a substantive right and an amendatory act concerning remedy or procedure, need not be and should not be invoked where the Legislature has provided a specific effective date.

The legislative purpose in providing a specific future effective date for § 301(2) was to indicate when the provision of the amendatory act superseding the "honestly, even though mistakenly" component of this Court's decision in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1 (1978), would take effect. In stating that the act should take effect January 1, 1982, the Legislature indicated its intention that the superseding provision would become effective on January 1, 1982, and that the honest, although mistaken, component of *Deziel* was to be superseded, effective on January 1, 1982, and not before that date. Accordingly, the superseding provision does not apply to weekly benefit periods commencing before January 1, 1982, but does apply to each weekly benefit period commencing on and after that date although the worker was injured or disabled before that date.

A change in law, just as a change in facts, may justify or require a redetermination of entitlement to workers' compensation benefits. Absent an indication in the language or the history of the 1980 reform legislation that would justify the conclusion that the Legislature did not intend that the amendment would become effective as to weekly benefit periods commencing on and after that date, without regard to whether the injury or disability occurred before that date, the amendment of § 301(2) should be held to be effective as to weekly benefit periods commencing on and after January 1, 1982, whether or not the injury or disability occurred before that date. Because the specific effective date of January 1, 1982, is determinative, Ford's claim that the amendment of § 301(2) was fully retroactive in all pending cases should be rejected.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — WORK-RELATED INJURIES — MENTAL DISABILITY.

The amendment of the Workers' Disability Compensation Act to provide that mental disabilities are compensable where they arise out of or are significantly contributed to or aggravated or accelerated by actual events of employment and not unfounded perceptions was enacted to invalidate a construction of the previous provision which permitted compensation for mental

disabilities where a claimant honestly, although mistakenly, believed the disability to be work-related; the amendment effected a substantive change in the law which applies only to those personal injuries which occurred on or after January 1, 1982 (1969 PA 317, MCL 418.301[1]; MSA 17.237[301][1]; 1980 PA 357, MCL 418.301[2]; MSA 17.237[301][2]).

SEPARATE OPINION BY LEVIN, J.

2. WORKERS' COMPENSATION — WORK-RELATED INJURIES — MENTAL DISABILITY.

*The amendment of the Workers' Disability Compensation Act to provide that mental disabilities are compensable where they arise out of or are significantly contributed to or aggravated or accelerated by actual events of employment and not unfounded perceptions applies to weekly benefit periods commencing on and after January 1, 1982, whether or not the injury or disability occurred before that date (1980 PA 357, MCL 418.301[2]; MSA 17.237[301][2]).*

*Glotta, Adelman & Associates, P.C.* (by *Richard M. Skutt*), for the plaintiff.

*William J. Devers, Jr.,* Office of General Counsel (*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.,* by *Thomas P. Chuhran* and *Martin L. Critchell,* of counsel), for the defendant.

Amicus Curiae:

*Bockoff & Zamler, P.C.* (by *Daryl Royal*), for Michigan Trial Lawyers Association.

RILEY, J. The issue to be decided in this case is whether MCL 418.301(2); MSA 17.237(301)(2)[1] of 1980 PA 357 will have prospective or retroactive

---

[1] "(2) Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof." MCL 418.301(2); MSA 17.237(301)(2).

effect.[2] This Court holds that MCL 418.301(2); MSA
17.237(301)(2) was enacted to invalidate this
Court's decision in *Deziel v Difco Laboratories, Inc
(After Remand)*, 403 Mich 1; 268 NW2d 1 (1978),
thus effecting a substantive change in the law and
that the provisions of this amendment have pro-
spective application.

Plaintiff, Quay Hurd, began working for the
defendant, Ford Motor Company, in 1962. In 1974,
plaintiff sought psychiatric treatment, complaining
that he was nervous and believed his bosses and
coemployees were against him. He related a spe-
cific incident when a general foreman yelled "you
are crazy" into his ear, subsequently causing him
to hear roaring sounds in his head.

The plaintiff was later transferred to a different
shift and experienced a decline in his psychiatric
symptoms. However, following a return to his
regular shift, the plaintiff's symptoms reappeared.
He was treated for these symptoms on many occa-
sions in the plant medical department, but the
culmination of these problems led to the plaintiff's
eventual placement on medical leave on Septem-
ber 27, 1975. On October 1, 1975, although still on
medical leave, allegedly commanded by voices, he
returned to the plant and attempted to convince
plant officials to turn off the machine he believed
was controlling his mind. The following afternoon,
again "commanded to do so by the voices he was
hearing," he attempted suicide by jumping off an
I-75 overpass. The multiple injuries sustained in
the fall rendered plaintiff a paraplegic.

The plaintiff was denied benefits by a hearing

---

[2] In addition, we acknowledge that this Court requested that the
parties brief the issue whether MCL 418.301(2); MSA 17.237(301)(2)
impliedly repealed by amendment the "honest perception" standard
of causation in a workers' disability compensation case of mental
disability. However, we do not address this issue because we conclude
that it is not the dispositive issue in this case.

referee, but, on appeal, the Workers' Compensation Appeal Board, in applying the "honest perception" standard of *Deziel (After Remand), supra,* found that work stresses "contributed to his illness, attempted suicide, and resulting disability." Subsequently, leave to appeal was denied by the Court of Appeals. However, application for leave to appeal in this Court was held in abeyance pending decision in *Selk v Detroit Plastic Products Co,* 419 Mich 1; 345 NW2d 184 (1984). Following *Selk,* this Court granted leave to appeal on September 19, 1984.

The pertinent rule of statutory construction used to determine the effect an amendatory act has on transactions and events completed prior to its enactment is set forth in 1A Sands, Sutherland Statutory Construction (4th ed), § 22.36, pp 300-301:

> In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment.

There being no indication the Legislature intended that MCL 418.301(2); MSA 17.237(301)(2) have any other interpretation, we hold this section to affect only those personal injuries occurring on or after January 1, 1982.

In light of our disposition of this issue, and inasmuch as the merits of the instant case are not before this Court, we do not, as in *Peters v Michi-*

*gan Bell Telephone Co,* 423 Mich 594; 377 NW2d 774 (1985), consolidated with *Morrish v General Motors Corp* (released simultaneously with this opinion) remand to the Workers' Compensation Appeal Board. We affirm the decision of the Workers' Compensation Appeal Board.

No costs, statutory interpretation being involved.

WILLIAMS, C.J., and RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RILEY, J.

LEVIN, J. *(separate opinion).* I agree with the majority that the amendment of § 301(2)[1] of the workers' compensation act, enacted as part of the 1980 reform legislation,[2] has "prospective application."[3] I also agree that § 301(2) is applicable to "personal injuries occurring on or after January 1, 1982." I disagree, however, with the conclusion that § 301(2) applies "only" to personal injuries occurring on or after January 1, 1982, and hence does not apply to injuries that occurred before that date.

I

The 1980 reform act provides that § 301 "of this amendatory act shall take effect January 1, 1982."[4] In stating that this act has "prospective application" only to "personal injuries occurring on or after January 1, 1982," the majority makes no

---

[1] "(2) Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof." MCL 418.301(2); MSA 17.237(301)(2).

[2] 1980 PA 357.

[3] *Ante,* p 534.

[4] 1980 PA 357, § 3.

reference to the provision of the 1980 reform act stating that § 301 "shall take effect January 1, 1982."

It does not acknowledge or consider that there are meanings of "shall take effect January 1, 1982" other than "shall take effect January 1, 1982" only as to "personal injuries occurring on or after January 1, 1982." It does not consider whether "shall take effect January 1, 1982" might mean that § 301(2) is also or alternatively effective either as to

(i) applications for workers' compensation decided on or after January 1, 1982, by a referee or the workers' compensation appeal board, or adjudicated on or after January 1, 1982, by the appellate courts although the injury or disability occurred before January 1, 1982, as was held by this Court on the original submission in *Selk v Detroit Plastic Products,* 419 Mich 1; 345 NW2d 184 (1984), or

(ii) payments of workers' compensation on or after January 1, 1982 although the injury or disability occurred before January 1, 1982, as was held by this Court on resubmission in *Selk v Detroit Plastic Products (On Resubmission),* 419 Mich 32; 348 NW2d 652 (1984), or

(iii) weekly benefit periods commencing on and after January 1, 1982 although the injury or disability occurred before January 1, 1982, as was held by this Court in *Franks v White Pine Copper Division,* 422 Mich 636; 375 NW2d 715 (1985).

A

The majority does not set forth and acknowledge its decisions in *Selk* and *Franks* on the retroactivity-prospectivity of the 1980 and 1981 reform legislation, or make any effort to explain how its decision today might be reconciled with its decisions in those cases other than to quote a generali-

zation that an amendatory act affecting substantive rights is presumed to operate prospectively, and not to "transactions and events completed prior to its enactment" absent an express or implied statement or circumstances surrounding enactment indicating a contrary legislative intent.

Without further discussion, the majority holds that because there is "no indication the Legislature intended that" § 301(2) "have any other interpretation," the section affects "only those personal injuries occurring on or after January 1, 1982." There is no consideration of whether the January 1, 1982 specific effective date might not be indicative of a contrary legislative intent, of an intent that § 301(2) apply, as in *Franks,* to weekly benefit periods commencing on and after January 1, 1982, although the injury or disability occurred before that date.

## B

In *Selk, supra,* pp 34-35, this Court held on resubmission that the date of the award was "not determinative," and that "it is the date of payment which triggers the application of the [increase in interest payable on unpaid compensation from five percent to the twelve-percent] rate" enacted as part of the 1981 reform legislation.[5] The 1981 reform act considered in *Selk,* like the 1980 reform act being considered in this case, also had a specific January 1, 1982, effective date.[6]

In *Franks* and the companion cases of *Chambers*

[5] 1981 PA 194, MCL 418.801(5); MSA 17.237(801)(5), providing that when weekly compensation is paid pursuant to an award, the compensation shall be paid at the rate of twelve percent per annum from the date each payment was due, until paid. Formerly, the workers' compensation act had not provided for the payment of interest, but this Court had held that interest was payable at the rate of five percent per annum; see *Selk v Detroit Plastic Products, supra,* pp 17 and 18, notes 4 and 5 and accompanying text.

[6] 1981 PA 194.

and *Gomez v General Motors Corp,* this Court
considered the effective date question in the con-
text of the provisions of the 1980[7] and 1981[8] re-
form legislation providing for the coordination of
workers' compensation benefits and unemployment
compensation, social security, and pension retire-
ment benefits. Those amendatory acts also pro-
vided a specific effective date of January 1, 1982.[9]
This Court held—although the amendments under
consideration affected substantive rights—that the
coordination provisions of the 1980 and 1981 re-
form legislation were applicable to weekly benefit
periods commencing on or after the effective date
although the injury or disability, and resulting
entitlement to workers' compensation benefits un-
der prior law, occurred and arose before January
1, 1982.

C

Thus, in sum, this Court has held that the date
of award is not determinative (*Selk*), the date of
injury is not determinative (*Franks*), and the date
of payment is determinative (*Selk*). This suggests,
consistent with *Selk* and *Franks,* that amended

---

[7] 1980 PA 357, amended § 358 of the workers' compensation act,
MCL 418.358; MSA 17.237(358), to provide that net weekly benefits
and certain lump sum benefits shall be reduced by one hundred
percent of unemployment compensation benefits paid or payable for
identical periods of time and chargeable to the same employer.

[8] 1981 PA 203, MCL 418.354; MSA 17.237(354), amended the work-
ers' compensation act to provide "[t]he employer's obligation to pay or
cause to be paid weekly benefits other than specific loss benefits"
"shall be reduced" by

(i) "[f]ifty percent of the amount of the old-age insurance benefits
received or being received under the social security act," and

(ii) "[t]he after-tax amount of the payments received or being
received under a self-insurance plan, a wage continuation plan, or
under a disability insurance policy provided by the same employer" to
the extent that employer contributions funded the pension or retire-
ment payments, for the "same time period."

[9] 1980 PA 357, § 3; 1981 PA 203.

Because this 1981 amendatory act was not given immediate effect,
it did not become operative until March 31, 1982.

§ 301(2) is effective as to weekly benefit periods commencing on and after January 1, 1982, without regard to the date of injury or disability or of award. Nevertheless, the Court holds today that the date of injury is determinative for the purposes of § 301(2).

## II

I dissented in *Selk* and concurred in *Franks.* In my view, the specific effective date of January 1, 1982, is determinative. In both *Selk* and *Franks,* I wrote that the Legislature, by providing a specific effective date of January 1, 1982, evidenced its intent not to leave the matter open to judicial construction, and meant that the amendatory act applies to weekly benefit periods commencing on and after the specific effective date.

In *Selk, supra,* p 36,[10] I expressed the view that interest accrued at the higher twelve-percent rate on and after, but not before, the January 1, 1982, effective date, without regard to the date of award or payment.[11]

In *Franks, supra,* p 678, I agreed with the majority that the provisions of the 1980 and 1981 reform legislation requiring the coordination of benefits were applicable to weekly benefit periods commencing on and after the effective date although the injury or disability occurred before January 1, 1982.

---

[10] The same view was earlier stated on the original submission in *Selk v Detroit Plastic Products, supra* at 15 (LEVIN, J., *dissenting*).

[11] I would have held that weekly payments of workers' compensation benefits that became due before January 1, 1982, on account of injuries that occurred before that date, that remained unpaid on January 1, 1982, because the employer disputed liability or for another reason, bear interest at five percent until January 1, 1982, and at twelve percent on and after that date. Thus, in such a case, interest would accrue at five percent during weekly benefit periods that commenced before January 1, 1982, and at twelve percent during weekly benefit periods that commenced on and after January 1, 1982.

The generally conflicting[12] rules of statutory construction, the empty distinction between an amendatory act concerning a substantive right and an amendatory act concerning remedy or procedure, need not be and should not be invoked where the Legislature has provided a specific effective date.

The legislative purpose in providing a specific future effective date was to indicate when the provision of this amendatory act superseding the "honestly, even though mistakenly" component of this Court's decision in *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1; 268 NW2d 1 (1978), would take effect. In stating that "this amendatory act should take effect January 1, 1982," the Legislature indicated its intention that the superseding provision would become effective on January 1, 1982.

The superseding provision is a subject matter of this amendatory act; a purpose of the act is to supersede the honest though mistaken component of *Deziel*. The apparent purpose of the January 1, 1982 effective date was to state when the Legislature desired the provisions of the amendatory act so superseding *Deziel* to become effective. The words "this amendatory act shall take effect January 1, 1982" thus mean that the honest though mistaken component of *Deziel* is superseded, effective on January 1, 1982, and not before that date. Accordingly—I agree with the majority that—the superseding provision does not apply to weekly benefit periods commencing before January 1, 1982, but—and here I find myself in disagreement with the majority—does apply as to each weekly benefit period commencing on and after that date although the worker was injured or disabled before that date.

---

[12] See Llewellyn, The Common Law Tradition of Deciding Appeals, Appendix C, pp 521 ff.

### III

In the instant case, the majority, in deciding that the amendment of § 301(2) has prospective application, indicates, although it does not state, that the amendment affects "substantive rights." The coordination provisions of the 1980 and 1981 reform legislation—held in *Franks* to be applicable to weekly payments of workers' compensation benefits that became payable on or after the effective date although the injury or disability, and resulting entitlement to workers' compensation benefits under prior law, occurred and arose before January 1, 1982—also affected substantive rights. Workers' compensation benefits payable to persons as a result of injuries or disabilities that occurred before January 1, 1982, were reduced or eliminated altogether as a result of the enactment of the coordination provisions and this Court's decision in *Franks* holding that the coordination provisions applied to weekly benefit periods that commenced on or after the effective dates although the worker was injured before January 1, 1982.

The question ultimately turns on what the Court perceives to have been the legislative intent. In *Hlady v Wolverine Bolt Co,* 393 Mich 368, 391; 224 NW2d 856 (1975), I observed that a change in law, just as a change in facts, may justify or require a redetermination of entitlement to workers' compensation benefits:

Workmen's compensation disability benefits, like social security and unemployment compensation benefits, are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. A claimant's entitlement to such benefits depends on the circumstances at the time of application and payment.

A change in law, statutory or judge-made, like a

change in fact, can effect a change in circumstances justifying, upon application of worker or employer, an award of benefits or termination or suspension of benefits previously awarded.

The right to workmen's compensation disability benefits depends on whether, at a given point in time, the claimant is within the statutory intendment. The scope of that intendment is subject to change. A determination that a claimant is not today entitled to disability benefits does. not preclude reexamination of his entitlement should the facts or the law, by legislative amendment or court decision, change tomorrow. Entitlement to continuing disability benefits is an open question.

This Court said in *Franks, supra* at 654:

Workers' compensation benefits are social-welfare income-maintenance benefits. Workers' compensation is the first or progenitor safety net providing a means of income maintenance for persons who have met misfortune or whose regular income source has been cut off. All the social welfare programs—workers' compensation, unemployment compensation, social security old age, disability, and survivors benefits, no-fault automobile benefits, aid to families with dependent children, and general assistance—are directed to the same objective, income maintenance. All these programs are funded by impositions on employers and others of mandatory payments (to the government, insurers or, in the case of the self-insured, to the beneficiary), with statutorily prescribed benefits. In providing for such benefits, the Legislature did not covenant not to amend the legislation.

Income-maintenance benefits payable under a legislatively mandated social welfare program are not property protected by the Due Process Clause, the Contract Clause, or the Takings Clause from substantive change by subsequent legislation irrespective of whether the recipient contributed to the cost of funding the benefit or of whether the

program replaces a tort remedy which has been abolished.[13]

In *Franks, supra* at 683, I said:

Workers' compensation benefits are payable weekly, and are geared to weekly wage loss. The nature of workers' compensation is that events after an award of benefits may change the extent of an entitlement to benefits. A disabled worker may cease to be disabled or obtain gainful employment. The number of the worker's dependents may change. The right to receive workers' compensation benefits thus generally depends on one's status, week by week, and is subject to change during any week. [LEVIN, J., *concurring.*]

Although each of the four amendatory provisions considered in *Selk, Franks,*[14] and the instant case was set forth in an act stating that the amendatory provision would "take effect January 1, 1982," this Court has given those words a different meaning in each case, moving from date of award on or after January 1, 1982, in *Selk* (on original submission), to date of payment on or after January 1, 1982 in *Selk* (on resubmission), to weekly benefit period commencing on or after January 1, 1982, in *Franks,* to personal injury occurring on or after January 1, 1982, in the instant case.

Absent our attention being called to something in the language or in the history of the 1980 reform legislation that would justify the conclusion that the Legislature, which expressly stated that the amendment of § 301(2) was to become

[13] See also *Richardson v Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971); *Alessi v Raybestos-Manhattan, Inc,* 451 US 504; 101 S Ct 1895; 68 L Ed 2d 402 (1981).

[14] Two separate provisions were considered in *Franks;* see ns 7 and 8.

effective on January 1, 1982, did not intend that the amendment would become effective as to weekly benefit periods commencing on and after that date, without regard to whether the injury or disability occurred before that date, I would hold that the amendment of § 301(2) is effective as to weekly benefit periods commencing on and after January 1, 1982, whether or not the injury or disability occurred before that date.

Intuitions that the Legislature "could not" have intended to defeat injured or disabled worker expectations based on past determinations, or to require redetermination of eligibility or entitlement where an employer claims that the amendment of § 301(2) justifies a change in a former determination do not, in my judgment, provide an adequate basis for reading the specific effective date—contrary to our decision in *Franks*—as if the Legislature had added before the words "January 1, 1982" the words "as to injuries and disabilities that occur on or after."

To be sure there is a difference between an amendment that might require a redetermination of eligibility or entitlement (§ 301[2]) and an amendment providing for a setoff (coordination of benefits dealt with in *Franks*) that reduces or eliminates altogether benefits resulting from a prior determination of eligibility or entitlement, but the difference is not a substantive or legal difference. The Court indicates that § 301(2) involves a "substantive right," but has not explained the substantive difference between the amendment at issue in this case and the amendment at issue in *Franks.*

If the Court were to adopt the construction I would adopt, it would mean that in those cases where the employer asserts that the change in law brought about by § 301(2) terminates the employ-

er's obligation to pay benefits that under prior law
it is obligated to pay, the employer could, by filing
a petition to stop payment of benefits[15] with the
bureau of workers' compensation, apply for a hear-
ing seeking a determination that benefits are no
longer, as of January 1, 1982, payable. Until the
employer received a favorable determination, it
would be obligated to continue to make payments
pursuant to any prior determination.

## IV

In the instant case, the employer, Ford Motor
Company, argued that the amendment of § 301(2)
was fully retroactive in all cases pending before an
administrative tribunal or the appellate courts on
January 1, 1982, with the result that weekly bene-
fits that became payable before, as well as after,
January 1, 1982, that would no longer be payable
under the provisions of amended § 301(2), would be
eliminated. Because, in my view, the specific effec-
tive date of January 1, 1982, is determinative, I
join with the majority in rejecting Ford's claim
that the amendment of § 301(2) was fully retroac-
tive in all pending cases.

Ford did not alternatively contend that if this
Court rejects its claim that § 301(2) is fully retroac-
tive it should hold that § 301(2) nevertheless limits
its obligation to pay weekly benefits, that other-
wise would become payable on and after January
1, 1982, in respect to injuries or disabilities that
occurred before that date. Because Ford did not
make that alternative argument, the Court does
not have the alternative question before it. Inter-
ested parties, who might seek to file amicus briefs
on the question, have not had an opportunity to
brief and argue the question.

---

[15] Welch, Workers' Compensation in Michigan: Law & Practice,
§ 20.10.

Recognizing that the precise question is not before us and that judgment should be reserved until the question is presented, I have had no alternative but to now address the question because the Court holds that § 301(2) applies "only" to personal injuries occurring on or after January 1, 1982.