GREENWOOD v PONTIAC BOARD OF EDUCATION

Docket No. 118221. Submitted October 16, 1990, at Lansing. Decided December 5, 1990, at 9:02 A.M. Leave to appeal sought.

Geneva H. Greenwood, an employee of the Pontiac Board of Education from 1966 through December 1982, sought workers' compensation benefits claiming she suffered total psychiatric disability as a result of on-the-job harassment. Following an administrative hearing on September 30, 1983, the plaintiff's claim for benefits was denied on the basis that she failed to prove entitlement by a preponderance of the evidence. The Workers' Compensation Appeal Board reversed, relying on a three-part test set forth in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1979), finding the plaintiff to be totally disabled and entitled to compensation. The defendant appealed.

The Court of Appeals *held:*

A plaintiff claiming psychiatric disability as a result of on-the-job harassment is entitled to compensation only where the disability arose out of an actual event of harassment and not an unfounded perception of harassment.

1. The WCAB erred as a matter of law in applying the subjective test of *Deziel* in evaluating the plaintiff's claim. After *Deziel* was decided, the Legislature amended MCL 418.310(2); MSA 17.237(301)(2) in a manner obviously intended to invalidate the "honest perception" test set forth in *Deziel,* thereby creating a substantive change in the law requiring that mental disabilities must arise out of actual events of employment and not unfounded perceptions of harassment. This change applied prospectively to work-related injuries occurring on or after January 1, 1982.

2. Both of the events and the resulting disability upon which the WCAB relied in awarding the plaintiff workers' compensation benefits occurred in December 1982, and thus the statute as amended was applicable to these proceedings. Because the

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 241-243, 301.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

WCAB made no finding of actual harassment and based its award of compensation solely on the plaintiff's perception of harassment, its decision must be reversed.

Reversed and remanded for further proceedings.

WORKERS' COMPENSATION — WORK-RELATED INJURIES — PSYCHIATRIC DISABILITY — HARASSMENT.

Prospectively, from January 1, 1982, a plaintiff claiming psychiatric disability as a result of on-the-job harassment is entitled to compensation only where the disability arose out of an actual event of harassment and not an unfounded perception of harassment (1980 PA 357, MCL 418.301[2]; MSA 17.237[301][2]).

*Rifkin & Kingsley, P.C.* (by *Michael J. Kingsley*), for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *David J. Berge*), for the defendant.

Before: SULLIVAN, P.J., and MAHER and GRIFFIN, JJ.

GRIFFIN, J. Defendant, Pontiac Board of Education, appeals by leave granted a decision and order of the Workers' Compensation Appeal Board reversing the decision of the hearing referee and awarding plaintiff, Geneva H. Greenwood, compensation for total disability. We reverse.

I

This case arises out of plaintiff's claim that she suffered total psychiatric disability as a result of on-the-job harassment.[1] Her claim was tried on September 30, 1983. The record reveals that, from March 1966 through December 1982, plaintiff was employed by defendant. Over the years, plaintiff held various positions ranging from bus driver and

[1] Plaintiff also brought a claim seeking compensation for physical disability. However, the denial of such benefits was not pursued as part of plaintiff's appeal to the WCAB. Accordingly, the issue is not involved in this appeal.

warehouse clerk to management aide. In 1977, plaintiff was working as a relief bus driver and office clerk when Dave Hott became her supervisor. According to plaintiff, Hott constantly harassed her because he took offense to "old women" and "bus drivers" being in his office. At one point, Hott reassigned plaintiff to garage duties, but plaintiff filed a grievance and was reinstated to her clerical position.

In July of 1979, William Jones became plaintiff's supervisor. Under Jones, plaintiff obtained a position as "management aide." According to plaintiff, she continued to feel harassed and pressured while working for Jones. On several occasions, Jones would tell plaintiff that he did not want her in the office. Ultimately, plaintiff's position as management aide was eliminated as part of a large cost-saving program. She was then relegated to being part-time bus driver, and her office duties were assumed by another office worker. Thereafter, plaintiff applied for three full-time jobs, which she did not get.

In December 1982, plaintiff applied for and obtained a position as a "Laborer II." Plaintiff discussed applying for the job with her supervisor, Jones. She testified that Jones told her not to apply for the job and that he would push her out of it if she got it.

Plaintiff held the Laborer II job for only four days. She testified that during this time she continued to feel harassed by the actions of Jones and others on the job. On what turned out to be her last day of work, plaintiff received a memorandum from Jones informing her that Laborer II employees would have to help shovel snow prior to starting work in the morning. According to plaintiff, she "went to pieces" when she read the memo. Later that day, plaintiff was working on the back

of a school bus when she slipped and fell off the bus and was injured. She was driven to the company doctor, Dr. Kayland, and she became hysterical in his office. That night, when plaintiff arrived home from work, she attacked her estranged husband, calling him "Bill Jones" and threatening to kill him.

Plaintiff was subsequently referred by her family physician to a psychiatrist, Dr. Frank Greene. Greene diagnosed plaintiff as having a "major depressive disorder, non-psychotic, single episode." Greene felt that plaintiff's job "caused her current state of depression and anxiety," and he could find no other source for her condition. Greene further concluded that plaintiff's condition was such that she "would never be able to return to work—especially for the Pontiac school system."

Dr. Leon Rubenfaer examined plaintiff in connection with her case. He found plaintiff to be suffering from an "extreme depressive reaction of an endogenous type." Rubenfaer concluded that plaintiff had become totally disabled as a result of her work environment.

Dr. Harvey Ager testified for defendant. Ager did not feel that plaintiff had a psychiatric disability, even if her characterization of her work environment were accurate. Rather, he found plaintiff mild to moderately depressed and did not feel that this prevented her from working.

II

Following an administrative hearing, plaintiff's claim for benefits was denied. The referee's order stated that plaintiff "failed to sustain her burden of proof by the preponderance of the evidence as to a disability causing an entitlement to benefits as a

result of an incident of 12-9-82 and defendant is not liable under the act."

In a sixteen-page opinion dated May 17, 1989, the WCAB reversed. Relying on the testimony of Drs. Greene and Rubenfaer, specifically finding that of Dr. Greene to be credible, the board determined that plaintiff was totally disabled. In determining whether plaintiff's disability was compensable, the board applied a three-part test from *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978):

> The Supreme Court in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1 (1978), has instructed us to apply a three part test in determining whether a claim [sic] psychiatric disability is compensable. Initially, we are to determine (1) whether the worker is disabled and (2) whether a personal injury (a precipitating work-related event) occurred. Once a plaintiff is found to be disabled and a personal injury is established, we must decide whether the claimant's employment combined with some internal weakness or disease to produce the disability. In applying the third part of the test, it is sufficient that a strictly subject [sic] causal nexus be utilized. The court held "under a strictly subjective causal nexus standard, a claimant is entitled to compensation if it is factually established that the claimant honestly (perceives) some personal injury incurred during the ordinary course of (her) employment caused (her) disability."

The board also purported to apply the provisions of MCL 418.301(2); MSA 17.237(301)(2):

> In analyzing the second test set out in *Deziel, supra,* we must look to Section 301 sub 2 of the Act:
>
> Mental disabilities and conditions of the aging process, including but not limited to heart and

cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

In its final analysis, the WCAB concluded that two specific events triggered plaintiff's disability and that plaintiff's honest belief that these acts were done to harass her was sufficient to entitle her to compensation:

In the case before [sic] the evidence of this record factually shows that, over a period of time, several events, actually occurred, which impacted on plaintiff's mental instability. Though plaintiff's perception of why these events occurred may be magnified or imagined we find as fact that she honestly perceived the events to be forms of a harassment instituted by defendant for the single purpose of harassing her.

\* \* \*

[W]e specifically do not find that the event constituting deletion of her management aide job [sic] the triggering event to her psychiatric disability. We find that although losing her management aide job and having to revert back to a parttime bus driver did cause her some depression and anxiety, however, her mental condition was not disabling at that time. We find that the events relating to her discussion with Mr. Jones about the Laborer II position and his directives concerning additional assignments after she was on the Laborer II job were the triggering events that caused her mental injury. Plaintiff testified that she believed that Mr. Jones did not want her to have the job and that he was going to do everything he could to get her out of it. We find as fact that she honestly perceived Dr. [sic] Jones's recommendation that she not take the Laborer II job combined with his additional work assignments were the precipitating events

which accelerated her lament [sic] emotional condition in a significant manner.

III

On appeal, defendant contends that the WCAB committed an error of law in applying *Deziel* and its subjective test in evaluating plaintiff's claim. We agree.

In *Deziel, supra* at 26, our Supreme Court adopted a subjective standard for determining compensability for mental injuries:

> We hold, as a matter of law, that in cases involving mental (including psychoneurotic or psychotic) injuries, once a plaintiff is found disabled and a personal injury is established, it is sufficient that a strictly *subjective* causal nexus be utilized by referees and the WCAB to determine compensability. Under a "strictly *subjective* causal nexus" standard, a claimant is entitled to compensation if it is factually established that claimant *honestly perceives* some personal injury incurred during the ordinary work of his employment "caused" his disability. This standard applies where the plaintiff alleges a disability resulting from either a physical or mental stimulus and honestly, even though mistakenly, believes that he is disabled due to that work-related injury and therefore cannot resume his normal employment. See Anno: *Workmen's compensation: neurasthenia as compensable,* 44 ALR 500.
>
> The focal point of this standard is the plaintiff's *own* perception of reality.

Following *Deziel,* the Legislature adopted 1980 PA 357. Effective January 1, 1982, this legislation amended MCL 418.301(2); MSA 17.237(301)(2) to provide as follows:

Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

In *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), the Supreme Court expressly held that this statute created a substantive change in the law that was to be applied prospectively to work-related injuries occurring on or after January 1, 1982. In so doing, the Court expressly held that § 301(2) was enacted to invalidate the decision in *Deziel. Id.* at 534; see also *White v General Motors Corp,* 431 Mich 387, 393-394; 429 NW2d 576 (1988). In amending § 301(2), the Legislature intended to create a statutorily defined causation standard designed to eradicate potential problems with the "honest perception" test set forth in *Deziel.* See *Bentley v Associated Spring Co,* 133 Mich App 15, 20-21; 347 NW2d 784 (1984).

IV

In the present case, the WCAB made a factual finding that plaintiff became totally disabled as a result of two specific incidents: her discussions with Jones regarding the Laborer II position, and her receipt of the memorandum regarding snow removal. Both these events and the resulting disability occurred in December of 1982. Accordingly, the new statutory standard was applicable to these proceedings. See *Hurd, supra* at 535.

Having reviewed the record, we are persuaded by defendant's argument that the WCAB clearly

erred as a matter of law in its attempted application of MCL 418.301(2); MSA 17.237(301)(2). It is evident from the record that plaintiff's claim was not that she was disabled merely by talking to Jones about the Laborer II position or by being informed that she would have to shovel snow. The basis of plaintiff's claim was that she was disabled because of on-the-job harassment, and that these events, among others, constituted the harassment. Significantly, however, the WCAB made no finding that plaintiff had actually been harassed by the actions of her supervisors. Rather, the board concluded that plaintiff was entitled to benefits because she "honestly perceived" this to be the case. Indeed, the board went so far as to observe that plaintiff's perception of the triggering events may have been "magnified or imagined." In our view, it is clear that the board applied the wrong standard in this case.

The WCAB apparently confused matters by trying to use the three-part *Deziel* test in a modified fashion in light of the 1980 amendment of § 301(2). In so doing, the WCAB failed to recognize that the language amending § 301(2) was obviously designed to invalidate the subjective causal nexus standard articulated in *Deziel.* Under MCL § 301(2), as amended, plaintiff was only entitled to compensation if her disability arose out of an "actual event" of harassment, not her unfounded perception that she was being harassed. Since the WCAB made no finding of actual harassment and based its award of compensation solely on plaintiff's perception of harassment, its decision cannot stand. Accordingly, we reverse the order of the WCAB and remand the case for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.