ILOYAN v GENERAL MOTORS CORPORATION

Docket No. 118438. Submitted October 2, 1990, at Detroit. Decided
March 4, 1991, at 9:15 A.M. Leave to appeal sought.

Taher Iloyan was awarded workers' compensation benefits by a
hearing referee for emotional disability resulting from alleged
harassment by a supervisor during his employment by the
General Motors Corporation. The Workers' Compensation Ap-
peal Board affirmed. General Motors appealed by leave granted.

The Court of Appeals *held:*

The award of benefits must be reversed and the case re-
manded to the wcab for further proceedings.

1. The legal standard applicable in this case, 1980 PA 357,
MCL 418.301(2); MSA 17.237(301)(2), requires that the claimant
must be disabled; that an actual, precipitating, work-related
physical trauma or event, and not just an unfounded perception
thereof must have occurred; and that the employment must
have contributed to, aggravated, or accelerated the mental
disability in a significant manner.

2. A supervisor's effort to obtain compliance with production
standards is not necessarily harassment. Neither is setting a
production standard necessarily a basis for finding a contribu-
tion to, or aggravation or acceleration of, a mental disability in
a significant manner.

3. The wcab did not apply the standards correctly, but,
instead, mistakenly applied the former subjective standard
provided in *Deziel v Difco Laboratories, Inc (After Remand),*
403 Mich 1 (1978), which was invalidated by 1980 PA 357.

Reversed and remanded.

CAVANAGH, J., dissenting, stated that the majority incorrectly
applied the amendatory language of 1980 PA 357, "an un-
founded perception thereof," to the second prong of the test
articulated in *Deziel,* the requirement of a personal injury,
because the amendatory language was enacted to invalidate the
"honest perception" causation standard, the third prong of the

REFERENCES

Am Jur 2d, Workmen's Compensation § 301.

Mental disorders as compensable under workmen's compensation
acts. 97 ALR3d 161.

*Deziel* test. Under the second prong of the *Deziel* test, which still remains intact, a claimant has to establish that some physical trauma, mental stimulus, or mental stimuli actually occurred. In the next step, under the statute as amended, the claimant has to establish that the disability was caused by the actual events of employment, not the claimant's unfounded perceptions. The standard based on the claimant's honest, though mistaken, belief that the disability was caused by a physical or mental stimulus incurred during the ordinary work of his employment should no longer apply.

WORKERS' COMPENSATION — WORK-RELATED INJURIES — MENTAL AND NERVOUS INJURIES.

The standard applicable to whether mental and nervous injuries are compensable under the Workers' Disability Compensation Act requires that a claimant show by a preponderance of the evidence that the claimant is disabled; an actual, precipitating work-related physical trauma, event, or events, and not just an unfounded perception thereof, occurred; and the employment contributed to, aggravated, or accelerated the mental disability in a significant manner (1980 PA 357, MCL 418.301[2]; MSA 17.237[301][2]).

*James A. Tanielian,* and *Daryl Royal,* of Counsel, for the plaintiff.

*Evans, Nelson, Pletkovic & Hays, P.C.* (by *John J. Hays*), and *Willard W. Wallace,* for the defendant.

Before: DANHOF, C.J., and CAVANAGH and BEASLEY,* JJ.

BEASLEY, J. Defendant appeals by leave granted a split decision of the Workers' Compensation Appeal Board affirming a referee's decision which awarded benefits for plaintiff's emotional disability. We reverse.

Plaintiff began working for defendant in 1972. At that time, plaintiff had no problems relating to

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

nervousness or chest pains, and he passed his preemployment examination. He was employed at various times as an assembler, replacement operator, and repairman. In June 1981, plaintiff experienced chest pain and high blood pressure and consulted with the plant's medical department. The medical department sent him to a hospital, where plaintiff was admitted into intensive care for five days.

Plaintiff testified that he had been experiencing a lot of pressure at work, allegedly stemming from being "harassed" by foreman Lloyd Wine. Plaintiff claimed that, although Wine was not his foreman at the time, Wine would come and ask plaintiff to do jobs in addition to his regular work. He said this made him "feel down completely." Plaintiff said he was working twelve-hour days, six or seven days a week at that time. Wine testified that, although he was not plaintiff's direct supervisor at the time, he was ultimately responsible for the performance of the work, and had found it necessary to talk with plaintiff several times about plaintiff's unsatisfactory work.

On January 12, 1982, the incident giving rise to plaintiff's petition for workers' compensation benefits occurred. Plaintiff claims that he had been harassed during the previous two or three days. On the day in question, plaintiff claims he was working at his job when Wine, who was now his supervisor, kept coming up to him approximately every ten minutes and asking him to do more. Wine does not deny approaching plaintiff several times. Plaintiff claims he was exhausted, and says he told Wine he was doing the job to the best of his ability. Plaintiff testified that Wine accused plaintiff of being "baby-sat." Plaintiff says he was afraid of losing his job and losing everything.

Plaintiff says that his nerves were "stirred up"

and that he started sweating hard, his blood pressure rose, his legs started shaking, and he lost his strength. According to plaintiff, his union representative came and pulled him off the job and was talking to the foreman when plaintiff collapsed. Defendant's medical records indicate that plaintiff was brought to the medical department on a stretcher hallucinating, thinking his hands were gone and thinking he was dying. He was also screaming, incommunicative, and shaking. Plaintiff was taken to the hospital, where he woke up with his hand feeling frozen. Plaintiff was hospitalized for five weeks from March through April 1982, and was off work for several months.

Plaintiff says he was asked to return to work in August 1982 and reported to work on August 11, 1982, but was placed on temporary layoff. He returned to work again on August 23, 1982. On August 26, 1982, plaintiff was working on a dashboard and had been kneeling for fifteen minutes. He said that when he reached up, he started feeling dizzy and was taken to first aid, where his blood pressure was found to be elevated. Plaintiff testified that he was subsequently taken to the labor relations department, where he was accused of being under the effect of alcohol and drugs, and was assessed two penalty days. Plaintiff denies this charge, claiming that he had only taken his regular medication that day. A blood test performed a short time later did not show any alcohol in his blood. When he returned to work after serving the penalty days, plaintiff was informed he could not return until he had obtained a release from his doctor. Since that time, plaintiff has not returned to work.

The hearing referee awarded plaintiff workers' compensation benefits. On May 24, 1989, the WCAB

affirmed in a two-to-one decision. Defendant now appeals.

This case revolves around the standard to be applied in deciding whether mental and nervous injuries are compensable. In *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 24; 268 NW2d 1 (1978), the Supreme Court held that workers' compensation benefits may be awarded for mental injuries resulting from nervous or mental stimuli. The legal standard applicable to these claims prior to the enactment of a 1980 amendment was set forth in *Deziel* as follows: the claimant (1) must be found to be disabled, (2) must be disabled on account of some personal injury, and (3) under a "strictly subjective causal nexus," must factually establish, that he *honestly perceived* that some personal injury incurred during the ordinary work of the employment caused, the disability, or aggravated, accelerated, or combined with some internal weakness or disease to produce the disability. *Id.,* pp 25-26. "The focal point of this standard is the plaintiff's own perception of reality." *Id.,* p 26.[1]

Widespread dissatisfaction with this decision resulted in the 1980 amendment to MCL 418.301(2); MSA 17.237(301)(2) by 1980 PA 357, effective January 1, 1982, which provides:

> Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

---

[1] In this four-to-three decision, see the persuasive dissent of Chief Justice COLEMAN. *Deziel, supra,* pp 46-62.

In *Hurd v Ford Motor Co,* 423 Mich 531, 534-535; 377 NW2d 300 (1985), the Supreme Court stated flatly that this statute was enacted to invalidate the *Deziel* standard, specifically the subjective "honest perception" test, and gave it prospective application to affect only those personal injuries occurring on or after January 1, 1982. Given the injury date of January 12, 1982, the new statutory standard provided by the amendment is applicable to this case.

The legal standard set forth in the statute has three requirements which plaintiff must satisfy by a preponderance of the evidence: (1) the claimant must be disabled, (2) an actual, precipitating, work-related physical trauma, event, or events must have occurred, and not just an unfounded perception thereof, and (3) the employment must have contributed to, aggravated, or accelerated the mental disability in a significant manner. MCL 418.301(2); MSA 17.237(301)(2). And see *Peters v Michigan Bell Telephone Co,* 423 Mich 594, 623-624; 377 NW2d 774 (1985) (Riley, J., dissenting).

The issue whether a plaintiff is disabled is a question of fact. *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986). The wcab majority found plaintiff to be psychologically disabled on the basis of the testimony of Dr. Rubin.

Dr. Rubin diagnosed plaintiff as having "major depression," with the onset of the emotional disorder occurring in relationship to the stress plaintiff was allegedly experiencing in his workplace, where he described himself as feeling mistreated, pressured, and demeaned. Dr. Rubin concluded that, at the time of his evaluation, plaintiff could not return to work, had not been stabilized, and was in need of further psychiatric treatment. Dr. Rubin believed plaintiff to be totally disabled as a result of his disorder. A second psychiatrist, Dr.

Freedman, disagreed, saying that he considered plaintiff capable of returning to work, preferably under a different supervisor, and that, if pressed for a diagnosis, he would indicate that plaintiff suffered from "situational adjustment reaction with some aggressive features." Thus, clearly, the psychiatric opinions conflict. While it is unclear why the WCAB majority appeared to prefer Dr. Rubin's testimony over that of Dr. Freedman, the credibility of both lay and medical witnesses is essentially a question of fact to be determined by the WCAB. Where there is competent evidence on the record to support the findings of fact made by the WCAB on an issue, we ordinarily do not disturb them. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978).

However, in this case, we doubt that the WCAB majority correctly applied the standards mandated by the amendment to the statute. MCL 418.301(2); MSA 17.237(301)(2). The WCAB majority said, "Mr. Wine conceded that prior to becoming plaintiff's foreman he had contacted plaintiff, criticized plaintiff's work performance." An effort to obtain compliance with production standards is not necessarily "harassment." Neither is setting a production standard necessarily a basis for finding a contribution to, or aggravation or acceleration of, a mental disability *in a significant manner.*

Also, the WCAB majority said:

> Dr. Rubin testified that the onset of plaintiff's emotional disorder occurred in relationship to stresses he was experiencing in his workplace, "where he described himself as feeling mistreated, pressured, and demeaned."
> We finally find as fact that plaintiff honestly perceived that a personal injury occurred during the ordinary course of his employment caused his disability, that plaintiff's mental disability was

aggravated by his employment in a significant manner, and plaintiff's honest perception, arose out of actual events of employment and not unfounded perceptions thereof.

The WCAB majority later stated:

Plaintiff testified that Mr. Wine repeatedly criticized his performance throughout the day. Mr. Scott, plaintiff's co-worker, acknowledged that Mr. Wine came up to plaintiff several times during the afternoon. Finally, Mr. Wine conceded that he had occasionally criticized plaintiff for bad repair and poor installations.

Therefore, because plaintiff has not [sic] met the tests enumerated in *Deziel, id.,* and Section 301, We find that plaintiff has proven a work-related mental disability.

We believe the WCAB majority mistakenly applied the invalidated *Deziel* subjective standard.

Recently in *Greenwood v Pontiac Bd of Ed,* 186 Mich App 389, 397; 465 NW2d 362 (1990), this Court reversed an award of compensation, holding that the WCAB "erred as a matter of law in its attempted application of MCL 418.301(2); MSA 17.237(301)(2)." The *Greenwood* Court stated:

In amending § 301(2), the Legislature intended to create a statutorily defined causation standard designed to eradicate potential problems with the "honest perception" test set forth in *Deziel. [Id.,* p 396.]

In view of the foregoing, we reverse the award of workers' compensation benefits to plaintiff and remand this case to the WCAB for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

DANHOF, C.J., concurred.

CAVANAGH, J. *(dissenting)*. I respectfully dissent from the opinion of the majority that the recent amendment of the Workers' Disability Compensation Act, MCL 418.301(2); MSA 17.237(301)(2), by 1980 PA 357, and this Court's recent decision in *Greenwood v Pontiac Bd of Ed*, 186 Mich App 389; 465 NW2d 362 (1990), require us to reverse the award of benefits.

In *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1, 21; 268 NW2d 1 (1978), the Supreme Court addressed whether "the WCAB identified and correctly applied the legal standard for establishing legal causation in workers' compensation cases involving mental and nervous injuries." The initial consideration concerned what causal nexus had to be established by a plaintiff who is admittedly disabled on account of some personal injury *and* claims that his employment combined with some internal weakness or disease to produce the disability. *Deziel, supra* at 25.

Our Supreme Court held "that in cases involving mental (including psychoneurotic or psychotic) injuries, once a plaintiff is found disabled and a personal injury is established, it is sufficient that a strictly *subjective* causal nexus be utilized . . . to determine compensability." *Deziel, supra* at 26 (emphasis in the original). A claimant would be entitled to compensation once it was established that the claimant "honestly perceive[d]" some personal injury incurred during the ordinary work of his employment caused his disability. *Id.* Consequently, once a claimant proved (1) a psychoneurotic or psychotic disablement and (2) a personal injury, it would only be logical to "employ a *subjective* standard in determining whether the claimant's employment combined with some inter-

nal weakness or disease to produce the disability."
*Deziel, supra* at 30 (emphasis in the original).

According to the majority in this case, wide-
spread dissatisfaction with the *Deziel* opinion led
to the amendment of the Workers' Disability Com-
pensation Act to invalidate the subjective "honest
perception" test for causation. In agreement are
other members of this Court who have determined
that, in amending the statute, "the Legislature
intended to create a statutorily defined causation
standard designed to eradicate potential problems
with the 'honest perception' test." *Greenwood,
supra* at 396; also see *Bentley v Associated Spring
Co,* 133 Mich App 15, 20-21; 347 NW2d 784 (1984).

The statute now provides that a mental disabil-
ity "shall be compensable when arising out of
actual events of employment, not unfounded per-
ceptions thereof." MCL 418.301(2); MSA
17.237(301)(2). And now, according to the majority,
the legal standard requires that a claimant prove
(1) a disability, (2) the occurrence of an actual,
precipitating, work-related physical trauma, event,
or events, and not just an unfounded perception
thereof, and (3) that the employment must have
contributed to, aggravated, or accelerated the men-
tal disability in a significant manner. It is my view
that this standard is incorrect.

The majority has applied the amendatory lan-
guage—"an unfounded perception thereof"—to the
second prong of the *Deziel* test, the requirement of
a personal injury, when it is clear that the amen-
datory language was enacted to invalidate the
"honest perception" causation standard, the third
prong of the *Deziel* test. In similar fashion, the
*Greenwood* opinion acknowledges that the amen-
datory language was obviously designed to invali-
date the subjective causal nexus standard articu-
lated in *Deziel* and then applies the unfounded

perception language to the triggering event, the personal injury. *Greenwood, supra* at 396-397.

A claimant's honest perception or characterization of the triggering event has never been the issue. Under the second prong of the *Deziel* test, which still remains intact, a claimant has to establish that some physical trauma, mental stimulus, or mental stimuli actually occurred. In the next step, under the statute as amended, a claimant then has to establish that the disability was caused by the actual events of employment, not the claimant's unfounded perceptions thereof. The standard based on the plaintiff's honest, though mistaken, belief that the disability was caused by a physical or mental stimulus incurred during the ordinary work of his employment should no longer apply.

In the present case, the claimant established that he was disabled, that a personal injury occurred at work, and, through the use of medical experts, that his disablement was caused by his employment. Consequently, his honest belief that he was being harassed and that he was disabled because of a work-related injury should have no bearing on the outcome of this case. Furthermore, I do not consider the *Greenwood* opinion binding because in that case the WCAB made no finding of actual harassment and based its award of compensation solely on the plaintiff's perception thereof. That is not the case here, where there is supporting evidence of harassment.

I would affirm the decision of the Workers' Compensation Appeal Board.