HARRIS v. CHECKER CAB MANUFACTURING CORPORATION.

1. WORKMEN'S COMPENSATION—INFERENCES—EVIDENCE.
    The workmen's compensation commission may draw legitimate and reasonable inferences from established facts and circumstances but not inferences contrary to the established facts and the undisputed evidence.

2. SAME—FOOT INJURY—EVIDENCE.
    Workmen's compensation commission's finding that large load-bearing wheels of factory stock truck did not pass over and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation §§ 450, 481, 535, 536.

injure plaintiff's foot *held,* supported by competent testimony, but its conclusion that an auxiliary wheel ran over her foot was not a legitimate and reasonable inference from the established facts.

3. SAME—QUESTIONS REVIEWABLE—REFUSAL TO SUBMIT TO MEDICAL EXAMINATION.

Questions pertaining to plaintiff's refusal to submit to medical examinations and treatment are not considered, where no liability for workmen's compensation is found to exist on part of employer.

Appeal from Workmen's Compensation Commission. Submitted January 9, 1952. (Docket No. 21, Calendar No. 45,141.) Decided April 7, 1952. Rehearing denied May 16, 1952.

Jewell Harris presented her claim for compensation against Checker Cab Manufacturing Corporation, employer, and General Transportation Casualty & Surety Company, insurer, for injury allegedly suffered during employment. Award to plaintiff. Defendants appeal. Reversed and remanded for entry of award denying compensation.

*Sharpe, Stapleton, Huff & Adams,* for plaintiff.

*Ford, Hinga & Schmiege,* for defendants.

BUSHNELL, J.   Plaintiff Jewell Harris entered the employ of defendant Checker Cab Manufacturing Corporation at Kalamazoo in 1945. She was laid off in May of that year and did not return to work until July of 1948. She described her duties as "assembling work." This consists of putting upholstery on the panels inside the cabs and wood crash pads in the bottom of the cab bodies. She testified that prior to her accident on December 2, 1948, her health had been good and that she had never experienced any pain, swelling or stiffness in any of her joints.

Leo Fleckenstein, who was in charge of the department in which plaintiff worked, testified that at one time prior to the claimed accident Mrs. Harris complained about her arm being a little lame.

According to plaintiff, shortly after she commenced work on the morning of December 2, 1948, a fellow employee, Elizabeth O'Mara, who was on her way to the rest room, gave "a little push" to a truck load of fenders or running boards, which caused the truck to pass over the instep of plaintiff's right foot.

Elizabeth O'Mara testified that she had no recollection of this incident, and that the first time Mrs. Harris ever mentioned it to her was in July of 1949. Fleckenstein said he had heard nothing about it until shortly before the hearing in plaintiff's case. One of the defendant's foremen testified that a loaded truck would weigh about 500 pounds; that the trucks used in defendant's plant have a large pair of cast iron wheels "in the middle" about 14 inches in diameter, with an auxiliary wheel of 6 to 7 inches in diameter at each end of the truck.

Mrs. Harris worked the entire day of the accident and the day following, although she said her foot pained her. Several days later she obtained a pass from Fleckenstein to see the company nurse. She worked intermittently for 10 days more.

Defendant's registered nurse testified that she bandaged Mrs. Harris's foot, which was swollen but not bruised, and that on December 14th she sent her to Dr. William L. Green, defendant's physician. Dr. Green took X-rays of her foot which showed no evidence of any bone injury. He strapped plaintiff's foot with an elastic adhesive bandage and advised her to return to work. Mrs. Harris again visited Dr. Green on December 20th and 27th, and upon both occasions was wearing high-heeled shoes. He ad-

vised her to discontinue wearing these shoes, and put a plaster cast on her foot.

Plaintiff testified that while returning from Dr. Green's office on crutches she slipped, caught herself with her right hand, and painfully injured her wrist. She later had some swelling in the joint of her right little finger. The cast was removed by Dr. Green on January 13th and he advised plaintiff to exercise her foot and finger and told her she could return to work. He also advised her to go to a hospital for a complete check-up. She failed to keep 3 subsequent appointments for such an examination. On February 23d she was urged by the comptroller of the defendant company to see another physician, and she also failed to do this, although several appointments were made for her.

Dr. William L. Green testified that he told Mrs. Harris that her condition was the result of arthritis. Dr. Sherman Andrews testified that she had a "generalized arthritis;" and at another point said: "I felt like this was a rheumatoid type of arthritis." He believed there was no relation between her arthritic condition and her injury. Dr. Warren B. Crane also found a rheumatoid arthritic condition, but said that the original injury might have a causal connection with the present condition. On cross-examination he admitted that Mrs. Harris's arthritis might have had another cause, or no cause whatever. Dr. Robert B. Burrell stated that an injury to the foot could precipitate rheumatoid arthritis, and on cross-examination stated that there are many theorized causes such as "trauma, infection, endocrine imbalance, various metabolic disorders, circulatory difficulties."

The deputy commissioner found that Mrs. Harris received a personal injury arising out of and in the course of her employment; that she has been paid compensation for total disability at the rate of $21

per week for a period of 8 weeks prior to February 11, 1949, "and that the disability plaintiff has had since February 11, 1949, is not the result of her injury." He held that she was not entitled to any further compensation.

Upon review, the commission modified the award of the deputy commissioner and awarded plaintiff compensation for total disability from February 11, 1949, and until further order.

The commission said:

"In our opinion, there are facts in this case, which justify the conclusion that the plaintiff sustained an injury arising out of and in the course of her employment on December 2, 1948, which caused her to be, and to remain, totally disabled in the general field of labor during the period for which compensation payments were paid, and since February 12, 1949."

This general finding, standing alone, would be conclusive on review here by certiorari, because it is supported by plaintiff's testimony. We cannot weigh the evidence or disturb the finding even if we might have reached a different conclusion on the facts. *Lindsteadt* v. *Louis Sands Salt & Lumber Co.*, 190 Mich 451, and *Riley* v. *Mason Motor Co.*, 199 Mich 233.

The commission's general finding, however, is qualified by a more specific finding which reads:

"Mrs. Harris says that shortly after starting time on December 2, 1948, a co-worker who was a little late for work entered their department and proceeded to the rest room, which was nearby and close to where she was working; and, that one of the heretofore described trucks was in this employee's way and that when the employee gave the same a little push, a wheel ran over her right foot. The record does not distinguish as to which of the wheels injured this woman's foot, but in view of her failure

to make any outcry at the time, we believe it reasonable to assume that it was one of the auxiliary wheels because one of the load-bearing wheels would, most likely, have caused a crushing and distressing injury. She said nothing about this injury at the time, and just continued with her work, although alleging that her foot pained her the rest of the day."

This finding indicates that the commission did not determine that either of the large wheels ran over plaintiff's foot because no serious damage resulted and she made no outcry at the time. We must, therefore, find in the record some competent evidence to support the particular and specific finding that one of the auxiliary wheels caused the injury. *Becker v. City of Detroit,* 267 Mich 511. There is no testimony whatever in this respect.

Plaintiff was the only witness who testified that the truck ran over her foot. We also have the testimony as to the weight and construction of the loaded truck. According to plaintiff, 1 of the 4 wheels must have run over her foot. It seems impossible, in the light of the testimony as to the construction of the truck, that it could have been the auxiliary wheel. These are much smaller than the large weight-carrying wheels. It is entirely possible that the auxiliary wheels ordinarily do not touch the floor but are placed on the truck to balance it and prevent it from tipping a load. It is impossible to infer that an auxiliary wheel in the center of the front or rear of the truck could have run over plaintiff's foot without her being struck by the main body of the truck. There is no evidence of such an occurrence.

The commission may draw legitimate and reasonable inferences from established facts and circumstances. *Froman* v. *Banquet Barbecue, Inc.,* 284 Mich 44, 51; and *Goudie* v. *Lakey Foundry & Machine Co.,* 327 Mich 138, 141. Inferences, however, may not be drawn which are contrary to the established facts

and the undisputed evidence. *Putnam* v. *Beechler,* 299 Mich 552, 561.

The conclusion of the commission that the large wheels did not cause the injury is supported by competent testimony. But, the conclusion that an auxiliary wheel ran over plaintiff's foot is not a legitimate and reasonable inference from the established facts. Hence, there is no competent testimony in the record before us to support the commission's finding that plaintiff sustained an injury arising out of and in the course of her employment.

Questions pertaining to plaintiff's refusal to submit to medical examinations and treatment are not material in the light of our conclusion. The same observation is applicable to the questions raised regarding the medical testimony.

The award of the commission is vacated and the cause is remanded for the entry of an award denying compensation. Costs to appellant.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.