GARDNER v VAN BUREN PUBLIC SCHOOLS

Docket No. 134246. Submitted May 20, 1992, at Lansing. Decided December 7, 1992, at 9:55 A.M. Leave to appeal sought.

Anthony Gardner sought workers' compensation benefits for mental disability allegedly related to his employment with the Van Buren Public Schools. The Workers' Compensation Appeal Board ordered an open award of benefits, determining that he was mentally disabled, that he received personal injuries in the course of his employment, and that his employment significantly aggravated his mental condition. The defendant appealed by leave granted.

The Court of Appeals *held:*

1. The allegations of harassment and of a plot or scheme to fire the plaintiff were not substantiated by the appeal board.

2. Error requiring reversal occurred with regard to the standard used by the appeal board in finding causation and that the plaintiff suffered personal injuries. An objective analysis is used to determine whether a personal injury, usually in the form of a precipitating work-related event in mental disability cases, significantly affected an employee's mental condition. The board did not indicate in this case why an objective person would find significant the two incidents that the board found satisfied the requirement of a personal injury. It cannot be stated objectively that the incidents aggravated the plaintiff's mental condition in a significant manner or constituted an injury. To the extent that the plaintiff's mental condition was affected by the events, the effect was due to his perceptions of events that the board never found to be accurate. Mental disabilities are not compensable unless they arise out of actual events of employment and not unfounded perceptions.

3. A claim for mental disability cannot be supported by an event or injury of which the employee is not aware and never perceives.

4. The appeal board erred in relying on the opinion of a

REFERENCES

Am Jur 2d, Workers' Compensation §§ 339, 340, 597-598.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

medical expert to support its finding of causation. The expert's opinion was based upon significant facts never found by the appeal board and upon inaccurate characterizations of some of the facts that were found by the board.

5. Remand is not required because the facts as found by the board cannot support the plaintiff's claim.

Reversed.

JANSEN, J., dissenting, stated that the majority applied an essentially standardless objective-employee approach for determining an individual employee's specific workers' compensation claim.

1. WORKERS' COMPENSATION — MENTAL DISABILITIES — OBJECTIVE ANALYSIS.

Mental disabilities are not compensable under the Worker's Disability Compensation Act unless they arise out of actual events of employment rather than unfounded perceptions; an objective analysis is used to determine whether a personal injury, usually in the form of a precipitating work-related event in mental disability cases, significantly affected an employee's mental condition (MCL 418.301[2]; MSA 17.237[301][2]).

2. WORKERS' COMPENSATION — EXPERT WITNESSES — HYPOTHETICAL QUESTIONS.

Factual assumptions in a hypothetical question must be in substantial accord with the evidence accepted by the Workers' Compensation Appeal Board before the board may rely on an expert's opinion given in answer to the question.

*Sachs, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Granner S. Ries*), for the plaintiff.

*Lacey & Jones* (by *Susan B. Cope*), for the defendant.

Before: DOCTOROFF, C.J., and JANSEN and CORRIGAN, JJ.

DOCTOROFF, C.J. The Workers' Compensation Appeal Board ordered an open award of benefits for plaintiff after finding that he was mentally disabled, that he received personal injuries in the course of his employment, and that his employment significantly aggravated his mental condi-

tion. We find error requiring reversal in the
WCAB's reasoning pertaining to plaintiff's personal
injuries and their causation.

Plaintiff worked as a custodian for defendant
from February 1978 until June 4, 1984. He worked
at a high school from 1978 until the summer of
1981. He then worked at the South Junior High
School until December of 1983. During the sum-
mer of 1983, plaintiff worked at the North Junior
High School, but he returned to the South Junior
High School in September 1983 and continued to
work there until his last day of work in June 1984.
The evidence was almost overwhelming that plain-
tiff was an unpleasant, and probably threatening,
person, as well as a poor employee. Plaintiff had at
least four supervisors, and they all complained
about plaintiff's work performance. Fellow employ-
ees complained about plaintiff's conduct. The WCAB
found plaintiff was a "poor employee" and recog-
nized that the testimony indicated that plaintiff
was "a volatile, profane person who was a poor
employee."

Plaintiff's petition alleged constant harassment
leading to a psychiatric disability. He alleged nu-
merous events or incidents in support of his claim.
These included plaintiff's fellow employees being
jealous of his expensive home, supervisors and
other employees making false accusations about
plaintiff threatening people, plaintiff at times be-
ing given conflicting instructions by his supervisor
and the school principal at the South Junior High
School between the summers of 1981 and 1983,
and the head supervisor offering employees paid
days off in exchange for helping to get rid of
plaintiff. Many of plaintiff's specific claims of ha-
rassment were flatly denied by those involved;
other claims were explained as something less
than what plaintiff perceived. The WCAB did not

find that plaintiff was harassed and it did not make specific findings (one way or the other) regarding most of plaintiff's allegations. The allegations of harassment and of an "elaborate" plot or scheme to fire him that he repeatedly mentions in his brief were never substantiated by the WCAB.

Rather, the WCAB found two "occasions" involving "incidents" that significantly affected plaintiff's psychiatric disability. The WCAB found plaintiff was injured by "the fact that plaintiff was required to be subjected to a grievance hearing in regard to excess work and the fact that plaintiff was checked up on by his superiors." With regard to the grievance hearing, which occurred in the winter of 1983, the WCAB found that it was held at plaintiff's request and that it resulted in a reduction in plaintiff's assigned duties. The "excess" work involved was due to increased work loads assigned to all employees as the result of layoffs.

With regard to "checking up on" plaintiff, the WCAB found the head supervisor, Ed Randolph, requested plaintiff's supervisor during the summer of 1983, Hattie Owens, to find plaintiff's license plate number, that Owens requested another employee, Dan Daily, to help her, and that Randolph promised to "take care of" Owens if she helped Randolph. Randolph testified that he wanted to check whether plaintiff was working another job because of rumors Randolph had heard and because plaintiff had accumulated numerous unexplained absences. Randolph further testified that by "taking care of" Owens he had in mind letting her arrive late or leave early when she needed to. But Daily testified that he told plaintiff that he had been asked to "keep an eye on" plaintiff and that he had been offered paid time off if he could get plaintiff's license plate number. The "investiga-

tion" apparently never occurred once Daily informed plaintiff of what Owens had asked.

The WCAB additionally found that plaintiff received an injury when he was "checked up on" in the form of Randolph ordering plaintiff's first supervisor at South Junior High School to keep a record of plaintiff's work performance. There is no evidence in the record that plaintiff was aware of this order, and plaintiff never mentioned it at trial or to either of the doctors that testified.

On the basis of the testimony of psychiatrist Richard Feldstein, the WCAB found that these injuries significantly aggravated plaintiff's mental condition. Dr. Feldstein opined that there was a significant causal relationship between the stresses plaintiff experienced at work and plaintiff's mental disability. The doctor's opinion was given in answer to a hypothetical question in which the doctor was asked to assume the accuracy of the history plaintiff had previously given the doctor and to assume, among other things, that one of plaintiff's supervisors was "resentful of" plaintiff and gave plaintiff "additional work loads beyond that which was the norm." No specific mention was made in the hypothetical of the incident involving Dan Daily and plaintiff's license plate number, but plaintiff did mention the incident as one of several examples of harassment when he gave Dr. Feldstein a history. The excess work load incident was not mentioned by plaintiff in the history he gave to Dr. Feldstein. Dr. Feldstein believed plaintiff's claims of what happened at work were all true, and the doctor said that plaintiff had described suffering "abuse" at work.

The issues for the WCAB in this case were whether plaintiff suffered a personal injury in the nature of an actual, precipitating, work-related trauma or event and whether such injury contrib-

uted to, aggravated, or accelerated his mental disability in a significant manner. MCL 418.301(1) (2); MSA 17.237(301)(1), (2), MCL 418.401(2)(b); MSA 17.237(401)(2)(b), *Iloyan v General Motors Corp,* 187 Mich App 595, 600; 468 NW2d 302 (1991). Defendant conceded that plaintiff was disabled. The issues of personal injury and causation were both issues of fact for the WCAB. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 250; 262 NW2d 629 (1978); *Harris v Checker Cab Mfg Corp,* 333 Mich 66; 52 NW2d 599 (1952); *Lizut v Peerless Novelty Co,* 74 Mich App 199; 255 NW2d 637 (1977). Factual determinations of the WCAB are conclusive, absent fraud, if supported by any competent evidence in the record. MCL 418.861; MSA 17.237(861), *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). Bearing in mind our lack of fact-finding authority, we nevertheless find error requiring reversal in the standard used by the WCAB in finding that plaintiff suffered personal injuries and in the WCAB's finding regarding causation.

An objective analysis is used to determine whether a personal injury (usually in the form of a precipitating work-related event in mental disability cases) significantly affected an employee's mental condition. *Boyle v Detroit Bd of Ed,* 197 Mich App 255; — NW2d — (1992); *Sobh v Frederick & Herrud, Inc,* 189 Mich App 24, 28; 472 NW2d 8 (1991). As in *Sobh,* in this case the WCAB did not indicate why an objective person would find significant the two incidents that the WCAB found satisfied the requirement of a personal injury.

The first incident found by the WCAB involved plaintiff's claim of being given excess work. The claimed excess work load was due to layoffs of employees that required all remaining employees to do more work than before. There was no finding

by the WCAB that the work load represented harassment or part of a scheme to fire plaintiff, as plaintiff continues to allege. The grievance hearing occurred at plaintiff's request, and it concluded favorably to plaintiff. It also occurred many months before the last day that plaintiff worked (five or six months to a year or more, the record is not clear) and laid-off employees were being recalled by the time of plaintiff's last day of work. Plaintiff never mentioned to his own examining doctor that he had a problem with an excess work load.

Reduced to its accurate essentials, and as found by the WCAB, plaintiff received additional work because of layoffs, he complained about his work load, and his duties were "cut accordingly." It cannot be stated objectively that this incident aggravated plaintiff's mental condition in a significant manner. Indeed, it is doubtful whether this event constituted an injury. See *Boyle, supra.* To the extent that plaintiff's mental condition was affected by this event, the effect must have been due to perceptions of the event (e.g., part of a scheme to harass plaintiff) that the WCAB never found to be accurate. Mental disabilities are not compensable unless they arise out of actual events of employment rather than unfounded perceptions thereof. MCL 418.301(2); MSA 17.237(301) (2). See *Greenwood v Pontiac Bd of Ed,* 186 Mich App 389, 396-397; 465 NW2d 362 (1990), for another case where the WCAB found certain specific incidents but not the actual "harassment" claimed by the plaintiff.

The second incident relied upon by the WCAB in finding a personal injury was that "plaintiff was checked up on by his superiors." The WCAB relied on its finding that in the summer of 1983 plaintiff's supervisor was ordered to ascertain plaintiff's

license plate number and the supervisor requested assistance from a fellow employee. The WCAB also relied on its finding that plaintiff's first supervisor at the South Junior High School was ordered to keep a record of plaintiff's work performance. With regard to this last finding, it does not support the WCAB's determination because there was no evidence that plaintiff was ever aware of it. A mental disability claim cannot be supported by an event or injury the employee never even perceives.

Again, it cannot be objectively stated that the "checking up on" incident actually found by the WCAB—which incident never culminated in any actual investigation and which occurred a year before plaintiff's last day of work—would affect an employee in a significant manner. To have one's employer check on one's license plate number (even if the reason is unknown) is not particularly stressful, and there is no evidence that this incident, in itself, significantly affected plaintiff. Similarly, a supervisor checking on an employee's work performance or activities during work hours is something done to virtually all employees at one time or another and cannot constitute a personal injury. Plaintiff's theory was that this incident was one example of a pattern or scheme of harassment to get rid of him. But the WCAB only found as fact the example, not the scheme or the harassment.

In light of the facts found by the WCAB and our application of an objective standard, the decision of the WCAB is reversed. A remand is not necessary because the facts as found by the WCAB cannot support plaintiff's claim.

The WCAB also erred in relying on Dr. Feldstein's opinion to support its finding of causation. Although Dr. Feldstein's opinion was the only evidence specifically relied upon by the WCAB to find causation, this error alone would usually war-

rant a remand because it is the WCAB's function to determine causation, and evidence other than a medical opinion can be relied upon. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 120-121; 274 NW2d 411 (1979). But in light of our foregoing conclusion, a remand is not appropriate in this case.

In order to rely on an opinion given in answer to a hypothetical question, the factual assumptions in the hypothetical must be in substantial accord with the evidence accepted at trial. *Alexander v Covel Mfg Co,* 336 Mich 140, 146; 57 NW2d 324 (1953); *Osantowski v Pigeon Mfg Co,* 131 Mich App 728, 738; 346 NW2d 867 (1984) (at least "reasonably accurate"). And see *Sutinen v Sussex House, Inc,* 412 Mich 915; 315 NW2d 129 (1982). Dr. Feldstein's opinion regarding causation was based upon factual assumptions that were a far cry from the facts as found by the WCAB. The hypothetical was so defective that Dr. Feldstein's opinion with regard to causation cannot be considered competent evidence.

Dr. Feldstein believed that plaintiff was assigned a work load beyond the norm because of a supervisor's resentment. In contrast, the WCAB found plaintiff received excess work as a result of layoffs, something Dr. Feldstein was never informed of, and there was no evidence plaintiff received more work than anyone else. This is significant because the claim of excess work was one of the two alleged instances the WCAB found as fact, and it was not accurately represented to Dr. Feldstein. The other instance found by the WCAB regarded checking up on plaintiff and discovering his license plate number. This event was not even mentioned in the hypothetical question, other than by a general remark that the doctor should assume that everything plaintiff ever told the doctor was

"essentially correct." This leads to perhaps the greatest deficiency in the doctor's opinion: It was based on the assumption that all plaintiff's factual allegations and his claim of harassment were true. The vast majority of plaintiff's allegations, as well as his theories of harassment and a scheme to get rid of him, were never found as fact by the WCAB. Thus, the doctor's opinion was based upon significant facts never found by the WCAB and upon inaccurate characterizations of some of the facts that were found.

Because of our decision, it is unnecessary to address defendant's second issue, which pertains to the correct rate of compensation. However, we note plaintiff concedes the issue.

Reversed.

CORRIGAN, J., concurred.

JANSEN, J. *(dissenting).* For the reasons stated in my dissents in *Bach v Flint Bd of Ed,* 197 Mich App 247; — NW2d — (1992), and *Boyle v Detroit Bd of Ed,* 197 Mich App 255; — NW2d — (1992), I cannot accept the majority's application of an essentially standardless objective-employee standard for the determination of an individual employee's specific workers' compensation claim. The Workers' Disability Compensation Act is remedial legislation that should be construed to effectuate its purpose. *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977); *Loper v Cascade Twp,* 135 Mich App 106; 352 NW2d 357 (1984).