LOMBARDI v WILLIAM BEAUMONT HOSPITAL (ON REMAND)

Docket No. 154856. Submitted March 10, 1993, at Lansing. Decided
    April 20, 1993, at 9:15 A.M.

    Frank Lombardi was granted an open award of workers' compen-
        sation benefits to be paid by William Beaumont Hospital for
        mental disability after the Workers' Compensation Appeal
        Board reversed a hearing referee's decision to deny benefits.
        The referee had found that the disability was not caused by
        work-related conditions. The Court of Appeals denied the hospi-
        tal leave to appeal. The Supreme Court, in lieu of granting
        leave, remanded the case to the Court of Appeals for considera-
        tion as on leave granted. 440 Mich 874 (1992).

        The Court of Appeals *held:*

        Mental disabilities are compensable under the Workers' Dis-
        ability Compensation Act, MCL 418.301(2), 418.401(2)(b); MSA
        17.237(301)(2), 17.237(401)(2)(b), where they arise out of actual
        events of employment rather than unfounded perceptions, and
        are contributed to, aggravated, or accelerated by the employ-
        ment in a significant manner. Ordinary stresses of employment
        or hypersensitive or idiosyncratic reactions to such stresses do
        not establish a compensable injury, and both nonoccupational
        and occupational factors are considered in determining whether
        employment significantly contributed to, aggravated, or acceler-
        ated a claimed mental disability.

        In this case, remand is required because, while competent
        evidence supported the finding of mental disability, the appeal
        board did not fully consider the relative effects of nonoccupa-
        tional and occupational factors on the disability, thereby mak-
        ing incomplete its analysis of whether the employment signifi-
        cantly contributed to, aggravated, or accelerated the disability.

        Remanded.

WORKERS' COMPENSATION — MENTAL DISABILITIES — OCCUPATIONAL
    AND NONOCCUPATIONAL CAUSES.

    Both occupational and nonoccupational factors should be consid-

REFERENCES

Am Jur 2d, Workers' Compensation §§ 339, 340.
Mental disorders as compensable under workmen's compensation
    acts. 97 ALR3d 161.

ered when determining whether employment has significantly contributed to, aggravated, or accelerated a mental disability so as to make the disability compensable under the Workers' Disability Compensation Act (MCL 418.301[2], 418.401[2][b]; MSA 17.237[301][2], 17.237[401][2][b]).

*Slusky & Walt, P.C.* (by *Howard J. Slusky*), for the plaintiff.

*Lacey & Jones* (by *Susan B. Cope*), for the defendant.

ON REMAND

Before: BRENNAN, P.J., and HOOD and TAYLOR, JJ.

PER CURIAM. Defendant appeals from a February 25, 1991, order of the Workers' Compensation Appeal Board, which reversed the decision of a hearing referee and awarded plaintiff benefits for a psychiatric disability. This Court initially denied defendant's application for leave to appeal, but our Supreme Court has remanded the matter to this Court for consideration as on leave granted. 440 Mich 874 (1992).

Plaintiff immigrated to this country from Italy in his late teens. He worked for defendant for approximately twenty-six years, beginning in 1958. All but the first few months of his employment were spent in the hospital's laundry department. In the early 1970s, he became a supervisor in charge of numerous regular and temporary washroom workers.

Plaintiff testified that he suffered repeated verbal and physical abuse on the job from co-workers and supervisors. Some co-workers made disparaging remarks about his Italian heritage, calling him

"Wop" or "Dago," and telling him to go back home to Italy. Plaintiff explained that he was repeatedly threatened by co-workers, on one occasion with a knife, and was involved in a number of fights. On one occasion, two employees allegedly held plaintiff while another punched him in the stomach. On another occasion, an employee allegedly squeezed plaintiff in a "bear hug" so painfully that he sought treatment at a hospital emergency room and was sore for weeks. Plaintiff alleged that his co-workers also threw laundry bags and pushed heavy carts full of laundry at him.

Plaintiff alleged that his supervisors exacerbated his problems by failing to exercise proper discipline, and his control over the situation continued to deteriorate after a change in management in 1975. He complained that the new management changed the hospital's laundry procedures for the worse, and refused to allow him to keep his written work records in his native Italian, despite his inability to read or write in English. He also testified that he was designated as a "guinea pig" or scapegoat to be blamed any time something went wrong. Plaintiff explained that he eventually began having difficulty thinking straight and performing his job properly. Ultimately, in July of 1984, he reported to his immediate supervisor that he could not continue working, and was sent home. He has not returned to work ever.

Plaintiff also described some of the nonoccupational stresses in his life, such as the death of a brother several years before his last day at work, although he explained that he missed only three days of work and did not seek psychiatric help at that time. He also acknowledged that his wife continues to suffer from injuries sustained in a 1975 automobile accident. Although plaintiff denied any fault for his wife's injuries, he testified

that he felt sorry for her. He further testified that he blames himself for a deterioration of the marital relationship, explaining that the couple's sex life is not what it used to be because of his depression.

Dr. Forman, plaintiff's treating psychiatrist since February 1984, diagnosed plaintiff as suffering from disabling dysthymic disorder/depression. Dr. Forman received a history of work events from plaintiff, which was generally consistent with plaintiff's testimony at trial, and opined that plaintiff's psychiatric disability is causally related to those work events. When asked to indicate the effect of plaintiff's work situation in terms of significance, Dr. Forman opined that plaintiff's work had a great deal to do with his present disability.

Dr. Forman indicated that plaintiff also reported having stresses in life besides his work, such as difficulties with his wife and worry about her illness. He suggested that plaintiff's concerns about his wife, possibly in combination with the loss of his job, may have been a "last straw" in the progression of plaintiff's psychiatric disorder. Dr. Forman also admitted that he had no objective corroboration that the work events described by plaintiff actually occurred, and that plaintiff's mental condition may affect the accuracy of his perceptions.

Defendant's expert, Dr. Ager, also found plaintiff to be mentally disabled, possibly by organic brain syndrome and Alzheimer's disease, or possibly a major depressive disorder with agitation and psychotic features. However, Dr. Ager doubted the accuracy of plaintiff's description of work events, and opined that plaintiff's job played no role in the development of his mental disability. Dr. Ager suggested that nonoccupational factors, such as

marital problems and the death of family members, might have affected plaintiff's mental condition.

The hearing referee denied benefits, finding that plaintiff's disability was not caused by work-related conditions. Plaintiff appealed to the WCAB, which reversed the decision of the hearing referee and granted an open award of benefits on the basis of the "controlling" opinion of a third panel member assigned to the case when the two original panel members were unable to agree on the disposition of the case. Essentially, the original panel members disagreed with respect to the credibility of plaintiff's testimony regarding the occurrence of precipitating work events. One panel member found plaintiff's testimony insufficient to establish that the alleged events actually occurred, given the lack of corroboration and the effect of plaintiff's mental illness on his perception of reality. The other panel member found plaintiff's testimony to be credible, noting that it was consistent with the histories he gave to the medical experts in this case, as well as the absence of any evidence rebutting plaintiff's description of the alleged work events. The third panel member agreed with the latter view, adding that plaintiff's claims could not be disbelieved simply because he may misperceive events.

Plaintiff's mental disability is not disputed in this appeal, only his entitlement to workers' compensation for that disability. Plaintiff's claim is governed by the following statutory standard set forth at MCL 418.301(2); MSA 17.237(301)(2) and MCL 418.401(2)(b); MSA 17.237(401)(2)(b):

Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if

contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

This standard replaces the so-called "honest perception" standard set forth in *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1; 268 NW2d 1 (1978), whereby causation may be established strictly on the basis of the claimant's honest though perhaps mistaken subjective belief that some work injury caused the mental disability. The statutory standard creates an objective test, whereby a mentally disabled claimant must establish the occurrence of personal injury in the nature of an actual, precipitating, work-related physical trauma, event, or events, rather than unfounded perceptions thereof, and that the employment contributed to, aggravated, or accelerated the mental disability in a significant manner. *Gardner v Van Buren Public Schools*, 197 Mich App 265, 269-270; 494 NW2d 845 (1992); *Iloyan v General Motors Corp*, 187 Mich App 595, 600; 468 NW2d 302 (1991). Questions of personal injury and causation are issues of fact for the WCAB, and absent fraud, the WCAB's factual determinations are conclusive on appeal if supported by any competent evidence in the record. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Aquilina v General Motors Corp*, 403 Mich 206, 213; 267 NW2d 923 (1978). Whether the WCAB applied the correct legal standard, however, is a legal question fully reviewable by this Court. *Gardner, supra.*

We reject defendant's contention that the WCAB applied a subjective, honest perception standard instead of determining whether the work events alleged by plaintiff actually took place. Despite the

acknowledgment in the controlling WCAB opinion that plaintiff "may" misperceive events, and references to what plaintiff "honestly perceived" contained in the noncontrolling concurring opinion, both members of the WCAB majority believed plaintiff's testimony that the alleged events in fact "occurred."[1] There is no determination in the controlling or concurring opinions that plaintiff's description of the work events is inaccurate. Moreover, the fact that both opinions emphasize the lack of any testimony rebutting plaintiff's version of events indicates that the WCAB did not rely upon plaintiff's testimony merely to establish his perceptions, but to establish what actually occurred at work.

Of course, workers' compensation benefits are not available just because a plaintiff establishes the occurrence of some work incident or event that is upsetting to the plaintiff. Rather, the incidents or events must amount to a personal injury from an objective person's point of view. The events must be more than ordinary or relatively innocuous job stresses colored by the plaintiff's hypersensitive or idiosyncratic reactions. *Boyle v Detroit Bd of Ed,* 197 Mich App 255, 260-261; 494 NW2d 818 (1992). Here, at least some of the circumstances plaintiff viewed as harassment might be objectively characterized as the normal and expected challenges and demands of his work, e.g., lazy or incompetent co-workers, seeming indifference from supervisors, and management's insistence that he keep his work records in English. However, plaintiff also described repeated incidents of actual

---

[1] Because the controlling opinion of the WCAB in this case expresses agreement with the decision of the concurring panel member, we look to both the controlling and concurring opinions for expressions of the WCAB's rationale, but we do not suggest that a common rationale or actual concurrence is necessary. See *Pye v Chrysler Corp (On Remand),* 190 Mich App 214; 475 NW2d 461 (1991).

verbal and physical abuse. We doubt that any objective person would consider these insults and physical assaults to be the ordinary stresses of employment. The WCAB found as fact that plaintiff suffered "harassing" and "unusual stresses" at work. These factual findings are conclusive on appeal, because they are supported by competent testimony of the plaintiff. *Aquilina, supra.*

We find no merit in defendant's argument that plaintiff's testimony is insufficient to support the WCAB's findings of fact. It is well established that the WCAB is entitled to rely upon uncorroborated lay testimony, even if arguably disputed by certain medical witnesses. *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630; 242 NW2d 393 (1976). Contrary to defendant's argument, the WCAB's ability to rely upon lay testimony is not limited to the issue of disability. The claimant's own testimony may be used to establish issues of personal injury and causation as well. *Kepsel v McCready & Sons,* 345 Mich 335; 76 NW2d 30 (1956). Here, the WCAB relied solely upon plaintiff's testimony to establish the existence of personal injury, but its finding of work-related causation was also supported by the testimony of plaintiff's treating psychiatrist. Plaintiff's potential to misperceive events is relevant to the weight or credibility of his testimony, not its legal competence or admissibility.

We are troubled, however, by the WCAB's rather conclusory determination that plaintiff's employment contributed to, aggravated, or accelerated his mental disability in a significant manner. Because significance is a relative concept, the significant manner test requires an analysis whether the events occurring at work had more than a minor contributing, aggravating, or accelerating effect in the overall psychiatric scheme. *Sobh v Frederick & Herrud, Inc,* 189 Mich App 24, 30; 472 NW2d 8

(1991). This necessarily involves a review and comparison of all the factors contributing to disability, both occupational and non-occupational. To the extent that this Court's opinion in *Bachula v General Motors Corp,* 191 Mich App 193; 477 NW2d 486 (1991), conflicts with *Sobh* in suggesting that only the effect of work-related factors need be considered, we find that *Sobh* is controlling authority under Administrative Order Nos. 1990-6, 436 Mich lxxxiv, and 1992-8, 441 Mich lii, because the *Sobh* decision preceded the *Bachula* decision by several months.

In this case, the controlling and concurring opinions of the WCAB contain no mention of the various non-occupational factors that might have contributed to plaintiff's disability, much less an analysis of the relative effect of occupational and nonoccupational factors on plaintiff's mental condition. Indeed, the controlling opinion contains but a single fleeting reference to the "significant standard," and the concurring opinion offers little more than a conclusory finding of significant contribution, aggravation, or acceleration in the form of the statutory language. Such conclusory treatment of the significant manner issue is insufficient to facilitate meaningful judicial review. *DeGeer v DeGeer Farm Equipment Company,* 391 Mich 96, 101; 214 NW2d 794 (1974). Therefore, we remand this case to the WCAB for a determination whether plaintiff's employment was a significant contributing, aggravating, or accelerating factor in the overall scheme of his mental disability, taking into consideration both nonoccupational and occupational factors. We do not retain jurisdiction.

Remanded.