WILKINS v GENERAL MOTORS CORPORATION

Docket No. 146588. Submitted December 21, 1993, at Lansing. Decided May 2, 1994, at 9:10 A.M. Leave to appeal sought.

Ora Lee Wilkins sought workers' disability compensation benefits following a physical altercation with a co-worker at their place of employment with General Motors Corporation. The incident occurred on July 17, 1985, and the plaintiff alleged an ongoing psychiatric disability resulting from the incident. Her personal psychiatrist released her to return to work on September 30, 1985, with the recommendation that she not work with the co-worker with whom she had the altercation. The Workers' Compensation Appeal Board affirmed a hearing referee's determination that the plaintiff was disabled as a result of the July 17, 1985, incident, but that she was no longer disabled on September 30, 1985. The plaintiff appealed by leave granted.

The Court of Appeals *held:*

1. The appeal board erred in concluding that the plaintiff was not disabled on September 30, 1985.

2. The definition of the term "disability" applicable to injuries sustained before May 14, 1987, MCL 418.301(4); MSA 17.237(301)(4), means a limitation of an employee's wage-earning capacity in the employee's general field of employment resulting from a personal injury or work-related disease. The plaintiff is disabled because her psychological limitation with respect to the co-worker with whom she had the altercation has impaired her ability to compete in the general field of unskilled labor by reducing by one the number of jobs for which she is qualified. Her lack of ability to work in the vicinity of the co-worker limited her wage-earning capacity in her general field of employment.

Reversed and remanded.

JANSEN, J., concurring, stated that a mental disability must arise out of actual events of employment, not unfounded perceptions thereof.

REFERENCES
Am Jur 2d, Workers' Compensation §§ 242, 357, 380.
Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

WORKERS' COMPENSATION — WORDS AND PHRASES — "DISABILITY."
    The Workers' Disability Compensation Act defines the term "dis-
    ability" with regard to injuries sustained before May 14, 1987,
    as a limitation of an employee's wage-earning capacity in the
    employee's general field of employment resulting from a per-
    sonal injury or work-related disease (MCL 418.301[4]; MSA
    17.237[301][4]).

*Freid, Gallagher, Taylor & Associates, P.C.* (by
*Edward J. Gallagher, II*), for the plaintiff.

*Munroe & Nobach, P.C.* (by *Richard R. Weiser*),
for the defendant.

Before: SHEPHERD, P.J., and McDONALD and JAN-
SEN, JJ.

SHEPHERD, P.J. This Court granted plaintiff's
application for leave to appeal with regard to the
question whether she is "disabled" under § 301 of
the Workers' Disability Compensation Act, MCL
418.301; MSA 17.237(301). We conclude that the
Workers' Compensation Appeal Board applied an
erroneous interpretation of the act when it found
that plaintiff was not disabled. We reverse the
decision of the WCAB, and remand for further
proceedings in accordance with this opinion.

Plaintiff's claim of psychological disability arose
out of a dispute with a co-worker, Mr. Cash. Plain-
tiff and Mr. Cash gave divergent testimony regard-
ing the origin of the dispute. In any event, a
dispute erupted that led to a physical altercation
between plaintiff and Mr. Cash. The WCAB made
the following findings of fact and conclusions of
law with respect to the altercation and plaintiff's
subsequent condition:

    The parties stipulated that the plaintiff was
    involved in an incident on July 17, 1985. It is
    found as fact that this incident did occur. The

plaintiff's claim is based on an ongoing psychiatric disability resulting from this incident. The defendant argues, and the Administrative Law Judge so found, that Ms. Wilkens [sic] was disabled as a result of this incident until September 30, 1985, at which time she was released to return to work by her treating psychiatrist.

\*    \*    \*

It is noted and found as fact that both the plaintiff and Chester Cash required medical attention. Both employee Cash and Ms. Wilkens [sic] were sent to the labor relations department to remain there till the end of the shift. Ms. Wilkens [sic] later sought treatment at the Bay Medical Center, where x-rays were taken and a prescription was given to her. Ms. Wilkens [sic] began treating with her personal psychiatrist, Dr. Aygen, on July 30, 1985. She was admitted to the psychiatric ward at the Bay Medical Center on August 8, 1985 and was discharged on August 12, 1985.

\*    \*    \*

The undersigned finds the testimony of Dr. Aygen to be more credible with respect to Ms. Wilkens' [sic] condition and ongoing problems. Dr. Aygen had treated Ms. Wilkens [sic] over a number of years and was familiar with Ms. Wilkens' [sic] response to treatment and ability to function. It is found as fact that Ms. Wilkens [sic] did suffer from an adjustment reaction with depressive features following the July 17, 1985 incident. It is further found as fact that as of September 30, 1985 Ms. Wilkens [sic] had recovered to the point of being able to return to work.

The plaintiff argues that the fact that Dr. Aygen released Ms. Wilkens [sic] to return to work with the recommendation that she not be placed on a job assignment near or with Mr. Cash is in fact a return to restricted employment. However, as Ms. Wilkens [sic] has no limitation in her wage earning capacity in her general field of employment she is not entitled to compensation benefits beyond September 30, 1985. The fact that Ms. Wilkens

[sic] should not return to work with a specific co-employee does not create such a limitation. *Murdock v Michigan Health Maintenance Organization,* 151 Mich App 578; 391 NW2d 757 (1986). In *Murdock* the Court of Appeals held that disability could not be based on the fact that an employee could not return to work for her employer, rather, the employee can be found disabled only if, as a result of her injury, her wage earning capacity in her general field of employment has become limited. In the instant case, Dr. Aygen has not even prohibited Ms. Wilkens [sic] from returning to work at General Motors, only from returning to work with a specific co-employee. Clearly, pursuant to *Murdock,* Ms. Wilkens [sic] must be found to be not disabled as of September 30, 1985.

The Administrative Law Judge found that Ms. Wilkens [sic] was disabled as a result of her July 17, 1985 incident until September 30, 1985. We affirm this finding.

The sole issue on appeal is whether the WCAB erred in its conclusion that plaintiff was not disabled on September 30, 1985.

As is evident from the foregoing decision, the WCAB relied heavily upon this Court's decision in *Murdock v Michigan Health Maintenance Organization,* 151 Mich App 578; 391 NW2d 757 (1986). (*Murdock I*)[1] However, this Court's decision in *Murdock I, supra,* was vacated along with this Court's decision in *Murdock II,*[2] by peremptory order of our Supreme Court. 434 Mich 851 (1990).

---

[1] The WCAB relied on this Court's opinion in *Murdock I* although it had been vacated almost two years before the WCAB's decision. This confusion may have arisen from the fact that the Supreme Court vacated this Court's decisions in *Murdock I* and *II* through one order, at 434 Mich 851 (1990). The Supreme Court used the plural when it stated that "the decisions of the Court of Appeals are vacated." *Id.* However, the order only made reference to *Murdock II* as the prior reported decision, i.e., "[r]eported below: 169 Mich App 324."

[2] *Murdock v Michigan Health Maintenance Organization,* 169 Mich App 324; 425 NW2d 544 (1988).

*Murdock I* and *II* both addressed psychological disability arising out of an altercation with a co-worker. Ms. Murdock alleged that the company's senior executive vice president had coerced her into having sexual relations, and later struck her at work. *Murdock I, supra* at 580. Ms. Murdock presented psychiatric evidence of severe depression in support of her claim for workers' compensation benefits. *Id.* In *Murdock I,* this Court concluded that the WCAB had applied an improper legal standard when it affirmed an award of benefits based upon the mere finding that Ms. Murdock was unable to return to work for Michigan HMO. *Id.* at 583-584. The Court remanded the matter to the WCAB for a determination of disability under the proper legal standard, i.e., "plaintiff's ability to obtain employment in another setting within her general field of employment." *Id.* at 584.

On remand from the decision in *Murdock I,* the WCAB concluded that Ms. Murdock was entitled to benefits for her psychological disability. Then, in *Murdock II,* this Court found that the WCAB erred in failing to apply the doctrine of equitable estoppel to deny Ms. Murdock benefits. The Court reached this result because Ms. Murdock had alleged in a separate sex discrimination action in circuit court that she could in fact return to work with Michigan HMO. As a result, in *Murdock II, supra* at 333, this Court concluded that the WCAB erred as a matter of law in awarding Ms. Murdock disability benefits.

As noted above, our Supreme Court vacated this Court's decisions in *Murdock I* and *II* via peremptory order. 434 Mich 851 (1990). Therein, the Supreme Court stated:

> [T]he case is remanded to the Workers' Compensation Appeal Board for reconsideration of its

factual finding of disability in light of plaintiff's receipt, following her dismissal, of unemployment compensation benefits. On remand, the appeal board also is to reconsider its finding of total disability on plaintiff's part within her general field of employment. [*Id.*]

On remand, the WCAB granted the plaintiff an open award of benefits on the basis of partial psychiatric disability. However, in *Murdock III*,[3] this Court again reversed the award of benefits on the ground that Ms. Murdock's injury was not work-related. Further, on a separate basis, this Court concluded that Ms. Murdock's application for unemployment benefits estopped her from making a claim for workers' compensation. *Murdock III, supra* at 536.

Through another peremptory order, the Supreme Court reversed this Court's decision in *Murdock III*, concluding that this Court "erred in substituting its findings of fact for those of the Workers' Compensation Appeal Board on the question of work-relatedness." 444 Mich 862 (1993). This Court was then directed to consider the other issues raised by the parties. *Id.*

At the time of the writing of this opinion, this Court has held any further decision in *Murdock* in abeyance pending the Supreme Court's decision in *Sobotka v Chrysler Corp*, lv gtd 443 Mich 869 (1993). However, this Court's most recent decision in *Sobotka v Chrysler Corp (On Rehearing)*, 198 Mich App 455; 499 NW2d 777 (1993), was limited to issues concerning the calculation of benefits. As such, although *Murdock* is very similar in its fact pattern to the present case, we do not expect any further developments in *Murdock* or *Sobotka* con-

[3] *Murdock v Michigan Health Maintenance Organization,* 198 Mich App 532; 499 NW2d 394 (1993).

cerning the definition of psychological disability. Accordingly, we will not delay our decision in this case.

At the center of this dispute is the definition of the term "disability" under the act. The Legislature has defined the term as follows:

> As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease. [MCL 418.301(4); MSA 17.237(301)(4).][4]

Our Supreme Court has discussed the definition of disability in the following manner:

> It is well-established that the standard to be used in general disability cases is whether there is an impairment in wage-earning capacity. This is determined by comparing post-injury with pre-injury ability to compete with the able-bodied for jobs within the type of work in which the injury occurred. [*Kidd v General Motors Corp*, 414 Mich 578, 591-592; 327 NW2d 265 (1982).]

Defendant argues that plaintiff should not be considered "disabled" because she can work not only at any other job in the general field of unskilled labor, but also at any job within defendant's employ as long as it is not in the proximity of Mr. Cash. Plaintiff argues that she is disabled because her psychological limitation with respect to Mr. Cash has impaired her ability to compete in the general field of unskilled labor by reducing the

---

4 MCL 418.301(4); MSA 17.237(301)(4) was amended in 1987. However, the new definition of disability does not apply to injuries sustained before May 14, 1987. *Fraley v General Motors Corp*, 199 Mich App 280, 283; 500 NW2d 767 (1993). We employ the former version of the statute in this case because plaintiff sustained her injury in 1985.

number of jobs for which she is qualified by one job. We agree with plaintiff's position that her inability to work in the vicinity of Mr. Cash limited her "wage earning capacity" in her general field of employment. MCL 418.301(4); MSA 17.237(301)(4).

Our interpretation of MCL 418.301(4); MSA 17.237(301)(4) should be consistent with the following fundamental rule of statutory construction:

> The context of the various provisions of the Workmen's Compensation Act must be construed in light of the Legislature's intention, and the remedial purposes of the act which properly placed the burden of compensating an employee upon industry. [*Welch v Westran Corp*, 45 Mich App 1, 5; 205 NW2d 828 (1973), aff'd 395 Mich 169; 235 NW2d 545 (1975).]

Further, our interpretation should be guided by the philosophy underlying the workers' compensation system:

> If the injury results from the work itself, or from the stresses, the tensions, the associations, of the working environments, human as well as material, it is compensable. Why? Because those are the ingredients of the product itself. It carries to the market with it, on its price tag stained and scarred, its human as well as its material costs. [*Crilly v Ballou*, 353 Mich 303, 326; 91 NW2d 493 (1958).]

In light of the remedial purpose and philosophy of the statute, we believe that the cost of plaintiff's psychological injury—however small—should be internalized into the production process. *Crilly, supra* at 326. Whether plaintiff's injury was work-related has never been an issue. Therefore, plaintiff should not be required to carry the burden of

the altercation with Mr. Cash alone. *Welch, supra* at 5. We hold that plaintiff's inability to work in the proximity of Mr. Cash limited her ability to compete in her general field of employment.

Our holding is consistent with *Adair v Metropolitan Building Co,* 38 Mich App 393, 403; 196 NW2d 335 (1972), where it was held that an unskilled worker, such as plaintiff, is disabled if there is any limitation on that person's ability to compete in the whole field of unskilled labor. Our decision is also consistent with this Court's more recent statement in *Garvie v Owens-Illinois Inc,* 167 Mich App 133, 136-137; 421 NW2d 602 (1988), that "[a]ll that the claimant need show is that there is some resultant physical or mental incapacity that prevents him from competing fully in the field of unskilled labor."

In the present case, as long as plaintiff's psychological aversion persists, she will always have one less job available in her general field of employment as compared to all other able-bodied workers. As such, the competitive playing field is not equal. In order to equalize the playing field, defendant was required to offer plaintiff favored work.[5] *Id.*

Accordingly, we conclude that the WCAB adopted an erroneous interpretation of MCL 418.301(4); MSA 17.237(301)(4) when it found that plaintiff was not disabled on September 30, 1985. We reverse the October 24, 1991, decision of the WCAB and remand for the entry of a finding that plaintiff's ability to compete in her general field of employment has been diminished, in accordance with this opinion.

Reversed and remanded. We do not retain jurisdiction.

---

[5] In this case, favored work would mean a position that excludes any potential interaction with Mr. Cash.

McDONALD, J., concurred.

JANSEN, J. *(concurring)*. I concur in Judge SHEP-HERD's opinion. I agree that plaintiff's treating psychiatrist's restriction that plaintiff not work with her coemployee, Mr. Cash, was a limitation on her ability to work in the field of unskilled labor (her general field of employment) and entitles her to workers' compensation disability benefits.

I write separately to emphasize that I continue to adhere to my positions stated in *Bach v Flint Bd of Ed,* 197 Mich App 247; 494 NW2d 815 (1992), rev'd 445 Mich 23; — NW2d — (1994), *Boyle v Detroit Bd of Ed,* 197 Mich App 255; 494 NW2d 818 (1992), rev'd 445 Mich 23; — NW2d — (1994), and *Gardner v Van Buren Public Schools,* 197 Mich App 265; 494 NW2d 845 (1992), rev'd 445 Mich 23; — NW2d — (1994). A mental disability must arise out of "actual events of employment, not unfounded perceptions thereof." MCL 418.301(2); MSA 17.237(301)(2); MCL 418.401(2)(b); MSA 17.237(401)(2)(b). Here, plaintiff established actual events of employment that led to her disability and she established causation through her treating psychiatrist. Further, there is no dispute that plaintiff's disability was work-related.

Accordingly, the WCAB applied an erroneous interpretation of MCL 418.301(4); MSA 17.237(301)(4) when it found that plaintiff was not disabled on September 30, 1985. Plaintiff is entitled to workers' compensation benefits.